NATIONAL BANK OF COMMERCE *v.* TOWN OF GRENADA.

(*Circuit Court, D. Colorado.* December 20, 1890.)

1. MUNICIPAL CORPORATIONS—INDEBTEDNESS—BONDS—ELECTIONS.
   Gen. St. Colo. § 3312, subd. 6, (section 14 of the act concerning towns and cities,) empowers the city council to contract debts for certain purposes, and declares that "no loan for any purpose shall be made except it be by ordinance * * * providing for the levying of a tax," etc. Subdivision 66 authorizes the council to pass all ordinances and rules, and make all regulations proper or necessary to carry into effect the powers granted to cities or towns. Subdivisions 68, 70, and 76 confer various powers and provide for their being carried into effect by ordinance. Section 15 declares that "municipal corporations shall have power to make and publish * * * ordinances * * * for carrying into effect ·or discharging the powers and duties conferred by this act." *Held,* that an election for funding municipal indebtedness providing for the issue of bonds should be called by ordinance, though section 3419, which provides for the funding of municipal indebtedness, does not expressly declare that the submission of such question to the voters shall be by ordinance.

2. SAME—ORDINANCES—PUBLICATION.
   Under the provision of section 14, that ordinances providing for a loan of the city's credit "shall be irrepealable until the indebtedness therein provided for shall be fully paid," such an ordinance is of "a general and permanent nature," within the meaning of section 25, which provides that ordinances of that nature shall not be in force "until the expiration of five days after" publication. Overruling 41 Fed. Rep. 87.

3. SAME—CONSTRUCTION OF STATUTE.
   Section 25 provides that "all by-laws of a general or permanent nature and those imposing any fine, penalty, or forfeiture shall be published * * *, and it shall

be deemed a sufficient defense to any suit or prosecution for such fine, penalty, or forfeiture, to show that no such publication was made," and enacts that "such by-laws and ordinances shall not take effect and be in force until the expiration of five days after they have been published." *Held*, that the last provision applied as well to by-laws and ordinances "of a general or permanent nature" as to those imposing a fine, etc.

4. SAME—ACTION ON BONDS—ESTOPPEL.

A recital on the face of municipal bonds that they were issued under an ordinance "adopted" does not estop the city to show as against a purchaser thereof that such ordinance was never published as required by law, and that the bonds were therefore invalid.

At Law. On motion for rehearing. See 41 Fed. Rep. 87.

Gen. St. Colo. § 3323, (section 25 of the act relating to towns and cities,) provides that "all by-laws of a general or permanent nature, and those imposing any fine, penalty, or forfeiture, shall be published * * *, and it shall be deemed a sufficient defense to any suit or prosecution for such fine, penalty, or forfeiture to show that no such publication was made;" and, after providing for publication by posting in case there are no newspapers published in the municipality, enacts that "such by-laws and ordinance shall not take effect and be in force until the expiration of five days after they have been published."

*Chas. B. Riley* and *Rhodes & Carpenter*, for plaintiff.

*Alvin Marsh*, for defendant.

PHILIPS, J. This case will be found in 41 Fed. Rep. 87. The motion for rehearing is based mainly on the construction given in the opinion to section 25 of the Colorado statute respecting the publication of certain by-laws and ordinances, and the effect of a non-compliance therewith on the validity of the bonds in question. On further consideration I am persuaded that in so far as the opinion delivered herein is open to the construction that the requirement respecting the publication of by-laws and ordinances should be restricted to such as are of a penal character, it is not tenable. The words, "and such by-laws and ordinances," include and refer to the term, "all by-laws and ordinances of a general or permanent nature," as much so as to "those imposing any fine, penalty, or forfeiture." The terms "by-laws" and "ordinances" are used in their ordinary sense, and imply one and the same thing. 1 Dill. Mun. Corp. (4th Ed.) § 307. Two principal questions are presented, therefore, on this branch of this motion: *First*, was an ordinance essential to authorize the funding of the debts of the town and the issue of the bonds? and, *second*, is such an ordinance "of a general or permanent nature" within the meaning of the charter?

It is true that section 3419 of the Colorado statute, which provides for the funding of the debts of towns, does not in terms say that the submission to the qualified voters of the question of funding and the order directing the issue of the bonds shall be by ordinance. But an examination of the whole statute, concerning towns and cities, has satisfied my mind, beyond a doubt, that it was in the contemplation of the law-makers, and is a necessary deduction from the tenor of the whole act, that wherever the governing body of such municipalities is empowered

to create a debt on the whole constituency, or to take action looking to the issue of municipal bonds, it should proceed in the more formal and solemn mode of an ordinance.    By section 3312, subd. 6, the city council are empowered to contract indebtedness for certain purposes; and it expressly declares that "no loan for any purpose shall be made, except it be by ordinance, which shall be irrepealable until the indebtedness therein provided for shall be fully paid, specifying the purposes to which the funds to be raised shall be applied, and providing for the levying of a tax," etc.    This language is most comprehensive.    It applies to every loan for any purpose, and requires that the ordinance shall provide for the levying of the tax to raise the fund for its liquidation.    Then the 66th subdivision authorizes the council "to pass all ordinances, rules, and make all regulations proper or necessary to carry into effect the powers granted to cities or towns."    The 68th subdivision empowers the council to construct water-works, or to authorize their construction, "and to enact all ordinances and regulations necessary to carry the powers herein into effect."    Then the 70th subdivision authorizes the condemnation for such purpose of private property, "in such manner as is or may be prescribed by law."    From which it is clear that in all such proceedings an ordinance is the appropriate method of inaugurating the public enterprises.    Subdivision 76 provides for the founding of city or town libraries.    "But no appropriation of money can be made under this section unless the proposition is submitted to a vote of the people at a municipal election    *    *    *    in such manner as may be prescribed by ordinance."    Section 15 declares that "municipal corporations shall have power to make and publish from time to time ordinances, not inconsistent with the laws of the state, for carrying into effect or discharging the powers and duties conferred by this act."    In *City of Central* v. *Sears*, 2 Colo. 588, it was held that the legislative power of the council in fixing the salary of the officers must be exercised by ordinance and not by resolution.    Chief Justice HALLETT said:

"That some of the powers conferred by the charter may be exercised by resolution of council, or in any other manner which may indicate the will of that body, is not and cannot be denied; and it is equally plain that other powers are of a legislative character, and can only be carried into effect by ordinance.    In the 38th section power to enact ordinances for purposes of carrying into effect provisions of the charter is expressly conferred, and generally the authority conferred upon the council is to be performed in that way.    Express authority is given in the 35th section to fix the compensation of city officers, and it is desirable that this should be done by ordinance, so that both the officers and the public may know that it is to be paid."

Citing *Smith* v. *Com.*, 41 Pa. St. 335, in which Chief Justice LOWRIE observed:

"But as a general principle we receive it with great favor, because councils, who are mere trustees of public functions, ought not to vote away the people's money as matter of grace."

This was said of the necessity of an ordinance.

It seems to me to be wholly inconsistent with the tenor and specifications of the Colorado law concerning towns and cities that so important

a matter as calling elections for the funding of the municipal indebtedness and providing for the issue of bonds, fixing their character, interest, and maturity, should be done by mere informal resolution on motion. The promoters of these bonds understood and acted upon the idea that an ordinance was the proper mode. And having adopted this method of bringing into existence the bonds in suit, the only remaining question in this connection is, is such ordinance of a "general or permanent nature" within the meaning of the said section 25?

In the original opinion herein it was held that such an ordinance is special in its character, "not for the government and guidance of the people, but designed only to authorize a change in the form of the municipal indebtedness;" citing *Amey* v. *Mayor*, 24 How. 365, and *Blanchard* v. *Bissell*, 11 Ohio St. 103. The first of these cases clearly is inapplicable, for the reason that the bonds in question were issued under a subsequent legislative act, which did not require publication, and the holding of the court was predicated of this fact. In the Ohio case it was held that the levying of a tax for a special purpose could be authorized by resolution, in the absence of any positive requirement that it should be done by ordinance; that such act was of "a temporary character, and prescribes no permanent rule of government." Without undertaking to affirm or deny here that the ruling as applied to the facts of that case was correct or incorrect, further consideration and investigation have satisfied my mind that such an ordinance as the one under review comes within the term "of a general or permanent nature." A by-law sustains the same relation to the municipal corporation as a legislative act does to the state. A general law is synonymous with a public act. *Clark* v. *City of Janesville*, 10 Wis. 178, 179, and local citations.

"Public or general statutes are in England those which relate to the kingdom at large. In this country they are those which relate to or bind all within the jurisdiction of the law-making power, limited as that power may be in its territorial operation, or by constitutional restraints. Private or special statutes relate to certain individuals or particular classes of men. * * * In this country the disposition has been on the whole to enlarge the limits of the class of public acts, and to bring within it all enactments of a general character, or which in any way affect the community at large. * * * Acts, too, which although affecting only a particular locality apply to all persons, are public acts." Sedg. St. & Const. Law, 24, 25.

So Potter's Dwar. St. p. 53, says:

"The most comprehensive, if not the most precise, definition is that given by Dwarris, 'that public acts relate to the public at large, and private acts concern the particular interest or benefit of certain individuals, or of particular classes of men.' * * * A general or public act, then, regards the whole community; special or private acts relate only to particular persons, or to private concerns."

These general rules were applied by the court in *Clark* v. *City of Janesville, supra*, to the provision of the state constitution, which declared that "no general law shall be in force until published." It was held that municipal bonds issued under a statute not published properly were void, because the act was general. In a certain sense the funding act in ques-

tion was for a special purpose,—a provisional arrangement; but it created an obligation in a specified, arbitrary form, binding upon the entire constituency, and subjected and bound the property of all to taxation for the payment of the accruing interest through a series of years, and for the ultimate liquidation of the principal sum. Then it concerned the public, —the whole body of the municipality. The ordinance in its effect, it seems to me, was also permanent. This term, (permanent,) in its ordinary acceptation, means "continuing in the same state, or without any change that destroys form or character, remaining unaltered or unremoved," etc. Webst. Dict. Recurring to section 3312, subd. 6, Gen. St. Colo., it is declared that an ordinance providing for a loan of the city's credit "shall be irrepealable until the indebtedness therein provided for shall be fully paid." By necessary implication, an ordinance providing for the funding of the city indebtedness into bonds could not be repealed before the bonds were paid. It would continue in the same state without any change that could destroy form or character, and therefore it is permanent in its nature. The object of such provision for publication, as said by the court in *Clark* v. *City of Janesville*, "was the protection of the people, by preventing their rights and interests from being affected by laws which they had no means of knowing." And the manner in which this entire transaction was conducted demonstrates the protecting wisdom of the statute. What, then, is the effect of the non-publication of the ordinance? Said section 25 of the Colorado statute declares that the ordinance "shall not take effect and be in force until the expiration of five days after" publication. And as the ordinance was never recorded, no *prima facie* case was made out as to the fact of publication by putting in evidence the book of ordinances, as said section 25 provides.

The only remaining question is, is there any recitation on the face of the bonds which estops the defendant from interposing this objection to the validity of the bonds? The only recital pertinent to the issue is that the bonds were issued "under ordinance of the city council of the city of Grenada adopted," etc. The recitation that an ordinance was adopted, if in fact it was adopted, would conclude the city as to the existence of any fact, *in pais*, necessary to be found by the governing body passing the ordinance prior to its passage. It would likewise conclude the city as to any irregularity or fraud preceding its adoption, of which the purchaser had no notice at the time of his purchase. But the recitation that an ordinance had been adopted would not conclude the city as to any fact, such as a condition precedent or subsequent, which the law did not make it the duty of the body issuing the bonds to pass upon and determine. This rule was recognized in *Town of Coloma* v. *Eaves*, 92 U. S. 484. Mr. Justice STRONG said:

"Where it may be gathered from legislative enactment that the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with, their recital that it has been made in the bonds issued by them and held by a *bona fide* purchaser is conclusive of the fact and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal."

But, as said by Mr. Justice MATTHEWS, in *Dixon Co.* v. *Field*, 111 U. S. 94, 4 Sup. Ct. Rep. 320:

"The converse is embraced in the proposition and is equally true. If the officers authorized to issue the bonds upon a condition are not the appointed tribunal to decide the fact which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words, where the validity of bonds depends upon an estoppel, claimed to arise upon the recitals of the instrument, the question being as to the existence of the power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals, and to make them conclusive. The very ground of the estoppel is that the recitals are the official statements of those to whom the law refers the public for authentic and final information on the subject."

And as a corollary to this proposition it would result, as maintained in the preceding part of the foregoing opinion by Mr. Justice MATTHEWS, that if the fact recited was one which the law devolved upon some other body or person to ascertain and determine no recital in the bond by any other set of officers issuing it, would preclude the admission of the real fact.

"So," says Mr. Justice MATTHEWS, *supra*, "if the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be that the authority to act at all depended upon the actual existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow that all persons claiming under the exercise of such power might be put to proof of the fact, made a condition of its lawfulness, notwithstanding any recitals in the instrument."

The only fact recited, as already shown, on the face of the bond in question is that an ordinance was adopted. It does not recite that the ordinance was ever published. The adoption of the ordinance devolved upon the city council in organic capacity at its lawful assembly. Proof of this fact, as shown in the former opinion herein, could be made *aliunde* without the ordinance being signed by the president of the council, or having been entered in the book of ordinances. But its publication, while a duty devolving upon the board, and in the prescribed manner, in the absence of any prescription in the statute as to how its publication shall be proved, cannot, in my opinion, be successfully claimed to be included in the mere recitation that the bond was issued under an ordinance adopted. The act of publication is subsequent to and independent of the act of adoption. The statute being silent as to how this fact of publication shall be evidenced, and no prescription that its certification shall be filed or entered of record by the clerk or other officer of the council, it was as much accessible to the purchaser of the bonds as to any one. The recitation on the face of the bond that it was issued under ordinance referred the purchaser to the law requiring the publication of such an ordinance. Should he not have informed himself respecting this matter, by which he could have learned that no publication had been made? The ordinance, though adopted, fell still-born for want of publication.

This case has given me deep concern, and the questions involved have embarrassed me no little. As owing to the amount involved in this suit there is no appeal from the judgment herein, and the decision involves such a large sum of money, I have given the case due consideration. In view, therefore, of the gravity of the situation, I have concluded to reconsider my former opinion, and to grant the motion for a new trial, in the hope that the case may receive the attention of the circuit judge on retrial. The motion for a new trial is sustained.