BIENVILLE WATER SUPPLY CO. v. CITY OF MOBILE et al.

(Circuit Court, S. D. Alabama. May 22, 1899.)

MUNICIPAL CORPORATIONS—CONTRACT WITH WATER COMPANY—CONSTRUCTION.

A contract between a city and a water company, chartered and given the right to lay its mains in the streets of the city by an act of the legislature, which merely bound the company to maintain a certain number of fire hydrants, for which the city agreed to pay a specified rental for a term of years, and fixed a maximum price, beyond which the company agreed it would not charge for water furnished for domestic use during the term, but which contained no grant of any privilege to the company, and no, contract for the furnishing of water to the inhabitants of the city, nor agreement that the city should not do so, is not violated by the erection or purchase of waterworks by the city for the supplying of water to its inhabitants and for its own use, and affords no ground for an injunction to restrain the city from so doing in pursuance of authority contained in its charter; the city not having refused to pay the stipulated rentals.

On Demurrer to Bill.

Bestor & Gray and R. H. Clarke, for complainant.
Boykin B. Boone and E. L. Russell, for defendants.

TOULMIN, District Judge. This is a bill in equity, filed by the complainant to enjoin the defendants from making or carrying out any contracts for supplying water to the inhabitants of the city of Mobile, or for the construction of a system of waterworks for that purpose, during the continuance of the contract made between the complainant and said city (which is set out and exhibited as a part of the bill), and to enjoin the defendants from proceeding to build or acquire a system of waterworks, to be owned by said city, to bring water into the city during the continuance of said contract. The defendants have filed a demurrer to the bill, setting up various grounds of objection thereto which it is unnecessary to specifically mention here. The facts as shown by the averments of the bill are substantially as follows:

The complainant is a corporation chartered by the legislature of the state of Alabama, for the purpose, among other things, of supplying water to the city of Mobile and its inhabitants. It was authorized to construct all needed canals, ditches, pipes, aqueducts, etc., as may be best suited for the purpose, and was "charged with the duty of introducing into the city such supply of pure water as the domestic, sanitary, and municipal wants may require." In the execution of this purpose the complainant laid mains and pipes in the streets of the city, and established hydrants and fire plugs therein, and built a reservoir, and erected pumps connecting with such mains and pipes, at large expense to itself. Said property is now in use by complainant for the purpose of supplying said city and inhabitants with water, which it is now doing. The city of Mobile is a municipal corporation chartered by the legislature of the state. On the 15th day of August, 1888, the complainant entered into a contract with said city by which it agreed and contracted to furnish for the use of the city 260 fire hydrants, and to furnish water for fire service of a certain number of streams and pressure, and further agreed that the city should have

the unrestricted use of said hydrants for such fire purposes, and the free use of water for all municipal buildings. The complainant further agreed not to charge, during the continuance of the contract, for domestic use, a greater or higher rate for water than that named or specified in the contract. In consideration of the undertakings and stipulations of the complainant, as recited in the contract, the city agreed to pay to complainant, for the use of said hydrants, at the rate of $50 a hydrant per annum during the continuance of the contract. It was mutually agreed that the contract should be for 6 years, the payments to be made monthly. On the 14th day of April, 1891, the contract was extended for a period of 12 years from the 1st day of July, 1888, to wit, to the 1st day of July, 1900, and is now in full force and effect.

The bill avers that the complainant has complied with all of the obligations and requirements of the contract on its part, is still doing so, and is ready and willing to continue so to do. It avers that the city of Mobile has violated, and is proceeding to further violate, its said contract with the complainant, in that, on the 14th day of May, 1898, it had bought and taken possession of a waterworks plant, and is now operating the same, selling water to customers, and cutting rates below those fixed in said contract, and actually competing in the business of selling and furnishing water to its inhabitants, and has taken away some of complainant's water customers, thereby decreasing the latter's income. It is further averred in the bill that said defendant is building another system of waterworks, to supply itself and its inhabitants with water, before the expiration of said contract, and that it claims the right so to do under the provisions of its charter and an act of the legislature of the state approved November 30, 1898. The city's charter provides that it has the right to contract for, build, purchase, or otherwise acquire public works, subject to the approval of a majority vote of its citizens at a special election called therefor. In July, 1897, an election was held, and a majority of the votes cast were in favor of the city contracting for building or otherwise acquiring a system of waterworks, to be owned and operated by the city, and the issuing of bonds of the city to pay for the same. The act of November 30, 1898, authorized the issuing of bonds for the purpose. It is further averred that, acting under and by virtue of the authority and power granted by its charter and the said act of November 30, 1898, the city of Mobile entered into a contract to have a system of waterworks built, and the building of the same is now going on, and that it made a contract with certain persons to take said bonds, and that such persons have already taken and paid for a part of them.

The complainant contends that, while it is under contractual relations with the said city, as shown by the contract exhibited to the bill, it has no legal right to impair the value of complainant's plant, and to destroy or diminish its income therefrom, which complainant claims would be the effect of said action in building waterworks and furnishing water to its inhabitants. It is averred that the city of Mobile is insolvent, and that the only way the complainant can protect itself is by the interposition of a court of equity.

It will be observed that there is no claim by the complainant that it has been granted an exclusive franchise to furnish water to the defendant and its inhabitants; but the contention is that, under the contract between the parties, the defendant has no right to furnish water to other persons, or to build or acquire a system of waterworks to supply water to itself and its inhabitants, during the continuance of the contract, and that to do so is a violation of it.     The equity of this claim depends, in my judgment, upon two inquiries: First, whether the defendant contracted with the complainant to furnish water to the inhabitants of the city of Mobile, or gave it the right to do so during the continuance of the contract; and, second, whether the defendant covenanted with the complainant not to build or acquire waterworks of its own during the continuance of said contract.

The city of Mobile granted to complainant no rights or privileges whatever.     The legislature of the state granted it the right to build waterworks, and to use the streets of the city of Mobile for laying pipes, mains, etc., for water purposes, and, among other things, authorized it and the city of Mobile to contract together for supplying said city with water.     They made a contract, but there is no provision in it for furnishing the inhabitants of Mobile with water, and no stipulation on the part of the complainant to do so; but it is clear that the parties contemplated that the complainant would contract with inhabitants of the city to supply them with water for domestic purposes, for it is stipulated in their contract that the complainant shall not charge for water supplied for domestic purposes higher rates than those specified in the contract.     It did not fix rates to be charged the inhabitants of the city for water, but stipulated only for a maximum rate to be charged.

The defendant was authorized and empowered, by its charter and the act of the legislature of November 30, 1898, to build or otherwise acquire waterworks of its own, for the supply of water to itself and its inhabitants, for the extinguishment of fires, and for sanitary, domestic, and other purposes; and, in its contract with the complainant, it made no covenant not to do so.     It agreed to pay to the complainant at the rate of $50 a hydrant per year for a given number of hydrants, erected and supplied by the complainant, and to make the payments monthly.     As long as it complies with this obligation, it meets all the requirements of the contract on its part.     There is no averment that the defendant has by act or word repudiated this obligation.     There is no averment that it has failed or refused to make the payments stipulated for, or that it intends to do so.     If the defendant were to refuse or fail to receive or use the water furnished, or offered to be furnished, by the complainant, as required by the contract, it would still be bound by the contract, and, until its expiration, to make the payments stipulated therein.     Fergus Falls Water Co. v. City of Fergus Falls, 65 Fed. 586.

The counsel for complainant has cited several authorities to sustain the contention that the defendant, having made a contract with the complainant which does not expire until July 1, 1900, cannot violate it without liability, and, in view of the circumstances of the case, should now be enjoined from violating it.     The principle of law

involved in the proposition is readily conceded, but the answer to the contention is that there are no facts averred in the bill showing that the defendant has violated, is violating, or intends to violate the contract it made with the complainant. A careful examination of the cases cited, I think, will show their inapplicability to this case. None of the contracts considered in those cases were like the one here.

The case of White v. City of Meadville (Pa. Sup.) 35 Atl. 695, was a case where the city was granted by the state the exclusive right to supply itself and others with water, or to make contracts with and authorize any person or company to erect a water plant, and give it the exclusive right to furnish water to the city and inhabitants for a given period. There were two distinct methods by which the city could supply itself with water. The court held that:

"The city having adopted one method excluded its right to exercise any further power in the premises.. There was no grant of power to put both methods in operation at the same time. Once the power had been exercised to supply the city by contract, through another creature of the same sovereign, then the municipal function had passed from the city, and must be performed by the other contracting party. The city having exercised its authority, and adopted the secondary method, and made a bargain, it must stand by the bargain."

The case of Fergus Falls Water Co. v. City of Fergus Falls, supra, was a suit at law brought to recover a sum of money on account of rent for water supplied to defendant under a certain contract. The city contracted with the water company, giving it the exclusive privilege of laying water mains in the city for 30 years. The contract provided that the company should furnish the city with a certain number of hydrants for a stated price per year, and stipulated that, at the end of 10 years, the city might, at its option, buy the waterworks. The contract also provided that the city would, during the period named, abstain from granting to any other party the right or privilege to lay pipes, or to furnish water to the city or its inhabitants, and to abstain from doing so for or on its own behalf. Some 3 months before the expiration of the 10 years the city council passed a resolution declaring the contract null and void, and canceled, and determined that the city would no longer take water from the water company under that contract, but undertook ex parte to make another contract. The water company refused to accept the last contract proposed, or to recognize it. All the rents were paid up to the last quarter under the original contract, and this suit was brought to recover for that quarter. The city resisted payment of rent on the ground that the contract was illegal, unreasonable, oppressive, and contrary to public policy, and that the city council had no authority to make it. The only question in the case, as stated by the judge, who decided it, was "whether the contract was so unreasonable, so oppressive, so contrary to public policy, that the law will interfere, and declare it void." He said:

"I am of opinion that, if the question had been raised at the outset. it is doubtful whether the city council had the authority to give an exclusive contract of this character to any person for the purpose stated. * * * I do not consider that the contract is so unreasonable, oppressive, or contrary to public policy as to be void."

It was held that the plaintiff was entitled to recover the full amount claimed for rent.

In the case of Atlantic City Waterworks Co. v. Atlantic City, 39 N. J. Eq. 367, the water company contracted with the city for the purpose of supplying the city with water, and accepted the provisions of an ordinance regulating the mode of supplying the water both for public and private use, and was granted the exclusive privilege of furnishing water to the city and its inhabitants. The city covenanted that it would not grant to any other person the right to lay pipes and furnish or supply water to the city and its inhabitants. The company constructed its works at large expense, and supplied the water as required by the contract. The city subsequently undertook to grant this right to other persons. A bill was filed to enjoin it. The city set up that its contract with the complainant was ultra vires and void. The court held that, whether or not the city's grant of the exclusive privilege of furnishing water was ultra vires and void, the city had exhausted its power as to providing a water supply, that the complainant's franchise was exclusive, and that the court would protect it against any invasion of its rights by persons laying pipes under the city's authority to compete with it. The court said that the city had already executed its power in the premises, and had secured the water company by contract against competition. An injunction was granted.

The case of City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, was a bill in equity filed by the water company to enjoin the city of Walla Walla from erecting waterworks in pursuance of an ordinance of the city to that effect. The city was authorized by its charter to grant the right to use the streets of the city, for the purpose of laying pipes intended to furnish the inhabitants of said city with water, to any persons or association of persons, for a term of not exceeding 25 years; and it was further provided that the city shall have power to erect and maintain waterworks within or without the city limits, or to authorize the erection of the same, for the purpose of furnishing the city or its inhabitants with a sufficient supply of water. An ordinance was passed by the city council, and accepted by the water company, granting to such company for a term of 25 years the right to lay mains and pipes in all the streets of the city, for the purpose of furnishing the inhabitants thereof with water, and entering into a contract with the company for the same term, by which the city agreed to pay certain rentals, and bound itself not to erect, maintain, or become interested in waterworks unless the contract should be avoided by the judgment of a court of competent jurisdiction on the ground of a substantial failure of performance by the company. The language of the contract is that, "until such contract shall have been so avoided, the city of Walla Walla shall not erect, maintain, or become interested in any waterworks." The water company substantially complied with the terms and conditions of the contract, which was still in force at the time the bill was filed. After this contract had been in force, and the stipulated rentals paid, for about six years, an ordinance was passed to provide for the construction of a system of waterworks for the pur-

pose of supplying the city and its inhabitants with water, and the issue of bonds to provide the necessary funds. The supreme court said, in substance, that the contract amounts to this: If the city should desire to establish waterworks of its own, it would do so by condemning the property of the company, and making such changes in its plant or such additions thereto as it might deem desirable, but that it would not enter into a direct competition with the company during the life of the contract; that, so long as the contract had not been avoided by a court of competent jurisdiction, as provided in the contract, but remained in force, the city had no right to establish waterworks, because it had so covenanted with the water company; and the injunction was sustained.

Thus we have seen that the contract, in every case to which our attention has been called, either provided for an exclusive right in the water company to supply water to the city and its inhabitants, granted or contracted for by the city, or contained a covenant by the city that it would not erect waterworks of its own, and would abstain from granting the right to do so to a competing company, during the life of the contract. We have seen that the contract under consideration in this case contains no such stipulation or agreement. We have seen that it does not attempt to grant any exclusive right to the complainant, and that it contains no provision that the complainant shall furnish water to the inhabitants of the city of Mobile, and no covenant by the city that it will not build or acquire waterworks of its own, or abstain from supplying water to its inhabitants, during the continuance of the contract. The parties might have made such a contract, but they did not do so.

From the views already expressed herein, and which must dispose of this case here, it is unnecessary to decide or discuss the question of laches raised by the defendant in the fifth, sixth, and seventh grounds of demurrer.

My conclusion, then, is that the complainant has shown no valid or legal grounds on which to grant it the injunction prayed for in the bill. My opinion, therefore, is that the demurrer, on the first, second, third, fourth, eighth, and ninth grounds assigned, is well taken, and that it should be sustained; and it is so ordered.

NOTE. On May 22d an order sustaining demurrers was entered, and allowed complainant 15 days within which to amend, etc. He did not amend, and on June 9, 1899, an order was entered dismissing bill. From these two decrees the complainant has taken an appeal to the United States supreme court.