TOWN OF SAPULPA *et al.* v. SAPULPA OIL & GAS Co. *et al.*

No. 920, Ind. T.     Opinion Filed October 15, 1908.

(97 Pac. 1007.)

1. **MUNICIPAL CORPORATIONS—Ordinances—Enactment—"Ordinance of General and Permanent Nature."** An ordinance amending an ordinance passed by an incorporated town in what was Indian Territory, granting to a corporation a franchise to furnish said town with light and heat by means of natural gas, and extending the time set in the ordinance amended for furnishing the same, is an ordinance of a "general and permanent nature" within the meaning of Mansf. Dig. Ark. sec. 924 (Ind. T. Ann. St. 1899, sec. 694.)

2. **ESTOPPEL—Pleading.** The town council of an incorporated town is not estopped to rely upon the invalidity of an ordinance amending an ordinance and extending the time set in the ordinance amended for furnishing gas to the inhabitants of said town, where said estoppel is not pleaded, and the evidence fails to disclose that the grantee of said franchise or its assignee was misled to its injury.

3.   **APPEAL AND ERROR**—Review—Findings of Master. Where a
suit in equity is, after issue joined, referred to the master in
chancery "to take evidence and report with conclusion of law ·
and fact herein," such finding of facts should be given the same
conclusiveness as the special verdict of a jury, and should not
be disturbed if there is any evidence reasonably tending to sup-
port it.

4.   **GAS**—Franchise—Construction. An ordinance passed by a town
council of an incorporated town in what was Indian Territory,
granting to a corporation therein named, its successors and as-
signs, a franchise to furnish said town with light and heat by
means of natural gas, and the right to use the streets, alleys,
and public places of said town in which to lay pipes, mains, and
other appliances and appurtenances through which to convey
said gas for that purpose, is a contract, and, as such, is governed
by the same rules of construction as any other contract between
individuals or private corporations, except that it should be con-
strued strictly against the grantee and liberally in favor of the
people or the grantor.

5.   **MUNICIPAL CORPORATIONS** — Franchise — Exclusiveness.  A
city granting such a franchise may grant a similar franchise to
some other person, firm, or corporation, unless the former fran-
chise was made exclusive in express and unequivocal terms.

(Syllabus by the Court.)

*Error to the United States Court for the Western District of the
Indian Territory, at Muskogee; William R. Lawrence, Judge.*

Action by the Sapulpa Oil & Gas Company and the Central
Light & Fuel Company against the incorporated town of Sapulpa
and others. Judgment for plaintiffs and defendants bring error.
Reversed, and cause dismissed.

On May 7, 1906, Sapulpa Oil & Gas Company, a corporation,
and Central Light & Fuel Company, a corporation, defendants in
error, plaintiffs below, brought suit against the incorporated town
of Sapulpa, Ind. T., and J. M. Weeks, mayor, Vernon Blake, re-
corder, J. P. Sallis, H. C. Abbott, P. J. Zachritz, Fred M. Edwards,
and C. C. Todd, aldermen, of said incorporated town, plaintiffs
in error (except said town) defendants below, in the United States
court for the Indian Territory Western District at Muskogee, to
enjoin and restrain said individual defendants from passing an
ordinance granting to one John Smith a franchise authorizing and

empowering him to lay the streets and alleys of said town with pipes and mains, and supplying the inhabitants thereof with natural gas for lighting and heating purposes. On the same day a temporary restraining order issued. Later the cause was dismissed by plaintiffs as to the incorporated town of Sapulpa. A motion to dismiss for want of proper parties and a special demurrer were filed by defendants, and overruled. Their joint answer was then filed, and on January 15, 1906, under a general order, the cause was referred to the master in chancery "to take evidence and report with conclusion of law and fact herein." On August 24, 1907, the master filed his report together with the evidence, in which, after reciting the pleadings and giving a list of the witnesses examined, he submitted the following:

"Findings of Fact.

"From the testimony of said witnesses the documentary evidence in the case and the pleadings herein I find the facts in the case to be as follows:

"(1)   That each plaintiff is a corporation organized and existing under and by virtue of the laws of the territory of Oklahoma.

"(2)   That on May 23, 1904, the common council of the incorporated town of Sapulpa, Ind. T., granted to the plaintiff Sapulpa Oil & Gas Company a franchise to furnish said town with light and heat by means of natural or manufactured gas, which ordinance is No. 62.

"(3)   That said ordinance provided that 'said franchise shall be a contract between the incorporated town of Sapulpa and said Sapulpa Oil & Gas Company and shall be binding upon all parties with equal force and effect, provided said company shall within ten days after the passage and approval of this ordinance file with the city recorder of the incorporated town of Sapulpa written acceptance of the terms and conditions of this ordinance and shall commence work within the incorporated town of Sapulpa within thirty days after the passage, approval and publication of said ordinance by the incorporated town of Sapulpa for the purpose of obtaining gas to comply with the terms of this ordinance;' that if said Sapulpa Oil & Gas Company shall fail to obtain in sufficient quantities gas from wells at or near the incorporated

town of Sapulpa on or before April, 1905, or shall within such time or at any time thereafter fail or refuse to furnish gas in such quantities as required for use by said incorporated town of Sapulpa and its inhabitants and consumers, then, in that event, the council of the incorporated town of Sapulpa reserves the right and privilege to grant a franchise by ordinance to any person, firm or corporation to lay pipes in the streets and alleys and public places for the purpose of supplying gas to the incorporated town of Sapulpa and its inhabitants, as intended and specified in this ordinance.

"(4)    That on February 28, 1905, the said council of the incorporated town of Sapulpa passed an ordinance, being No. 67, which said ordinance states that the ordinance passed and approved May 23, 1904, be amended in this respect; that is, that the time for the furnishing of gas for the incorporated town of Sapulpa by the Sapulpa Oil & Gas Company be extended to the 30th day of June, 1905.

"(5)    That on June 10, 1905, the Sapulpa Oil & Gas Company entered into a written contract with the plaintiff Central Light & Fuel Company, in which it assigned to said Central Light & Fuel Company all its interests in and to said franchise hereinbefore set forth.

"(6)    I further find that no competent evidence has been introduced to show that said Sapulpa Oil & Gas Company under its franchise of May 23, 1904, filed with the city recorder of the incorporated town of Sapulpa its written acceptance of the terms and conditions of said ordinance within 10 days after its passage, approval, and publication, and that proof of such fact is material and essential to maintain plaintiff's right of action.

"(8)    I further find that on February 28, 1905, the town council of the incorporated town of Sapulpa, Ind. T., met at the council room in said town, at which time there was introduced an ordinance entitled 'an ordinance amending section 6 of ordinance 62 of the incorporated town of Sapulpa, Indian Territory, granting to the Sapulpa Oil & Gas Company, a corporation, its successors and assigns, the right to use the streets, alleys, *et cetera,* of the aforesaid, and additions thereto, to lay pipes and convey gas through same.'

"(9)    I further find that at said council meeting a motion was made that the provisions of section 924 of Mansfield's Digest of the Statutes of Arkansas (Ind. T. Ann. St. 1899, § 694), re-

quiring full and distinct reading of ordinances on three different dates be dispensed with, as therein provided, and that the regular rules for passing ordinances be suspended and that said ordinance be passed to the second and third reading, which motion was duly carried.

"(10)   I further find that at said meeting it was moved that said ordinance be passed as read, which motion was duly carried, and said ordinance was declared duly passed and to take its place among the ordinances of the incorporated town of Sapulpa as Ordinance No. 67.

"(11)   I further find that on the vote for the suspension of the provisions of section 924 of Mansfield's Digest of the Statutes of Arkansas two-thirds of the council did not vote in favor of said motion.

## "Conclusion:

"I am therefore of the opinion and conclude that the Sapulpa Oil & Gas Company did not comply with the terms of Ordinance No. 62 to be performed by it, and that it forfeited all right in and to said franchise by reason of its failure to file with the city recorder of the incorporated town of Sapulpa a written acceptance of the terms and conditions of said ordinance and for the further reasons that it did not commence work within the incorporated town of Sapulpa within 30 days after the passage, approval and publication of said ordinance by the incorporated town of Sapulpa, and that it did not furnish gas to the incorporated town of Sapulpa, its inhabitants, and consumers before April, 1905. I am further of the opinion and conclude that the ordinance passed by the town council of the incorporated town of Sapulpa on February 28, 1905, is null and void, for the reason that said ordinance was advanced from the first to the third reading on the same day, without two-thirds of the members of said council voting in favor thereof, as provided in Mansfield's Digest of the Statutes of Arkansas, § 924.

## "Recommendations:

"I therefore recommend that the court enter a decree herein dissolving the injunction heretofore entered and dismissing the plaintiffs' complaint for want of equity. I respectfully ask the court to allow me the sum of $113.50 for my services herein ren-

dered, which includes a stenographic fee of $13.50, being for 45 folios of testimony and report at the rate of 10 cents per folio.

"Respectfully submitted,

"[Signed.]                                         CLARK J. TISDEL,

"Special Master in Chancery."

On the same day plaintiffs filed exceptions to the sixth and eleventh findings of fact, and to certain conclusions of the master therein specifically set forth, and it being admitted by all parties that the Sapulpa Oil & Gas Company accepted in writing the ordinance under which it is claiming within the time specified in said ordinance, in consideration of the other questions arising in this said case and particularly the exceptions to the master's report, the court sustained plaintiffs' exceptions thereto and entered a decree perpetually enjoining and restraining defendants and each of them from passing and considering the ordinance set forth in plaintiffs' complaint, and that plaintiffs recover costs. To all of which defendants excepted, and prayed and were granted an appeal to the United States Court of appeals in the Indian Territory, and the same is now  before us for review as the successors of that court.

*Gibson & Ramsey,* for plaintiffs in error.

*William T. Hutchings, George A. Murphy,* and *William P. Z. German,* for defendants in error.

TURNER, J. (after stating the facts as above).  Of the numerous assignments of error the first urged is:

"The court erred in sustaining the plaintiffs' fourth exception to the master's report, wherein the master concluded as follows: 'I am further of the opinion and conclude that the ordinance passed by the town council of the incorporated town of Sapulpa on February 28, 1905, is null and void, for the reason that said ordinance was advanced from the first to the third reading on the same day, without two-thirds of the members of said council voting in favor thereof, as provided in Mansfield's Digest of the Statutes of Arkansas, § 924,' (Ind. T. Ann. St. 1899, § 694)."

The ordinance here referred to is Ordinance No. 67, in which the town council undertook to extend the time designated in section

6 of Ordinance No. 67 so as to give the Sapulpa Oil & Gas Company until June 30, 1905, within which to furnish gas to the inhabitants of the town. It is unnecessary to discuss the facts set forth in this finding, since by defendants in error in their brief "it is admitted that the so-called Ordinance No. 67 granting an extension of time to the Sapulpa Oil & Gas Company was not passed in accordance with section 924 of Mansfield's Digest," which is as follows:

"All by-laws, ordinances, resolutions or orders for the appropriation of money shall require for their passage or adoption the concurrence of a majority of the alderman of any municipal corporation. All by-laws and ordinances of a general or permanent nature shall be fully and distinctly read on three different days unless two-thirds of the members composing the council shall dispense with the rule. No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title."

It is contended by them that it was not necessary to so pass it, that the same was not an ordinance of a "general or permanent nature," and did not come within the contemplation of the act. They cite no authority in support of this proposition, and with the contention we cannot agree. That the ordinance is one of a general and permanent nature we entertain no serious doubt. McQuillan, Municipal Ordinances, § 9, says:

"As regard their operation, ordinances are spoken of as 'general' and 'special.' All ordinances of a general nature having an obligatory force on the community and upon the administration of the municipal government may be denominated general."

See, also, *National Bank of Commerce v. Town of Grenada* (C. C.) 44 Fed. 262. *State of Iowa ex rel. C. C. Bump v. Omaha & Council Bluffs Railway & Bridge Company*, 113 Iowa, 30, 84 N. W. 983, 52 L. R. A. 315, 86 Am. St. Rep. 357, was an action to test the validity of the ordinance passed by the city of Council Bluffs amending an ordinance of the same city conferring upon the defendant as a corporation the power to construct, operate, and maintain street railways in the city of Council Bluffs. The lower court held that the ordinance in question was invalid for want,

Vol. 22—23

among other things, of proper publication. Section 492 of the Code of 1873 provides: "All by-laws of a general or permanent nature shall be published in some newspaper of general circulation in the municipal corporation. * * *" In passing upon the question as to whether or not the ordinance was one of a general or permanent nature, the Supreme Court said:

"The term 'by-laws of a general or permanent nature,' used in the section of the Code of 1873 above quoted, certainly includes ordinances such as that which we have before us. A by-law 'is a law made by a municipality for the regulation of affairs within its authority: an ordinance.' (Century Dictionary.) 'In general and professional use the term "ordinance" is almost, if not quite, equivalent in meaning to the term "by-laws," and is the word most generally used to denote the by-laws adopted by municipal corporations.' (1 Dillon, Municipal Corporations [4th Ed.] § 307.) The ordinance in question was of a general and permanent nature, and plainly was within the term 'by-law' used in the statutory provision."

It therefore follows that Ordinance No. 67 was void for the reasons stated by the master, that the court erred in sustaining plaintiffs' exception to this finding, and that said ordinance must be eliminated from further consideration unless, as is contended, the town is estopped to deny its validity, and that the work was not completed within the time therein specified. It is contended that the defendants in error, relying upon this ordinance or a waiver, express or implied, of the time limit, "spent large sums of money in laying its mains in the streets and alleys and furnishing gas to the city and its inhabitants, and the city cannot now be allowed to step in and make any such defense to the gas company." The findings of facts filed by the master do not so disclose, for the very good reason, as we presume, the question of estoppel was not raised by the pleadings, and was therefore not in issue in the case. It is well settled that estoppels against the public are not favored (16 Cyc. 781); also that, "in order to render admissible the matters on which an estoppel is based, it must be specially pleaded, whether the suit be at law or in equity" (4 Am. & Eng. Dec. in Equity, 375, and cases cited; *Deming Invest-*

*ment Company v. Shawnee Fire Insurance Company,* 16 Okla. 1, 83 Pac. 918, 4 L. R. A. [N. S.] 607; *Tonkawa Milling Company v. Town of Tonkawa et al.,* 15 Okla. 672, 83 Pac. 915).

8 En. of Pl. & Pr. 7, says:

"Under the Code system, * * * the great weight of authority is to the effect that the facts constituting an estoppel *in pais,* to be available, must, except in a few cases, be specially pleaded"—citing cases.

As to what the plea shall contain, 8 En. of Pl. & Pr. 11, says:

"He must allege that the party to be estopped has been guilty of misrepresentation or conduct inconsistent with the evidence he proposes to give, or the title or claim he proposes to set up. He must also allege that such misrepresentation or conduct was with intent to mislead, that the representations were known to the maker to be false, or that they were made with gross negligence, and that the fact of their being false was not known to the party setting up the estoppel. It must also be shown that the party pleading the estoppel acted to his prejudice on such representations, and that he will be prejudiced by allowing them to be disproved."

That such is not attempted to be set up in the complaint is apparent at a glance. After stating their corporate existence, plaintiffs in the complaint, in substance, allege the passing by the town of Sapulpa on May 23, 1904, of Ordinance No. 62, granting to Sapulpa Oil & Gas Company a franchise to furnish said town for 20 years, the same to be an exclusive right for 10 years, with light and heat by means of natural or artificial gas and files a copy thereof marked "Exhibit A"; that on February 28, 1905, said ordinance was amended by another ordinance passed by the common council of said town, which was made a part of the complaint as "Exhibit B," and that said ordinance was accepted; that, prior to the passage of the said second ordinance, said company had drilled several wells, and that the principal object in passing said ordinance was to extend the time for furnishing and delivering gas to said town beyond the time mentioned in the original ordinance; that said company, for financial reasons being unable to complete the work, had made a contract with its co-plaintiff, Cen-

tral Light & Fuel Company, to complete the work and carry out its purposes, and filed a copy of said contract as "Exhibit C"; that under said contract the streets of said town were immediately laid with pipes, mains, etc.; and from that time have continued to exercise said franchise and supply a large portion of the inhabitants of said town with gas, and have in every way complied with the terms and conditions contained in said franchise and ordinance.

"Plaintiffs further state that said town and its officers have been and are fully aware of the fact that plaintiffs have complied with the terms of said ordinance as aforesaid, and knew and know that the plaintiffs were and are expending their money in compliance therewith. Plaintiffs have used reasonable and due diligence in complying therewith, and in endeavoring to furnish natural gas and maintain works for the same, and supply said town and its inhabitants with gas."

The complaint then sets forth, in *haec verba,* section 1 of said Ordinance No. 62, and proceeds to charge the town council of Sapulpa with attempting to grant a franchise for a similar purpose to John Smith, sets forth a copy of the proposed ordinance to him, alleges irreparable injury in case the same is granted, etc., and prays for injunctive and other relief. Nowhere does the complaint attempt to set forth facts sufficient to estop defendants to rely on the invalidity of said Ordinance No. 67. We are therefore of the opinion that the court erred in sustaining plaintiffs' exception to the finding of fact relied on that said Ordinance No. 67 was void for the reason assigned by the master in his findings of fact, and must be eliminated from further consideration in this case.

Before passing, however, from this point, we desire further to say that if we are wrong and that such was not the rule of pleading in the Indian Territory at that time, and of this we are somewhat in doubt, that, independent of any question of pleading, the record nowhere discloses and it is nowhere claimed, except in the brief of defendant in error, that because of any act, omission, or concealment of plaintiffs in error they

were misled, to their injury. Nowhere does it appear that, relying on the validity of this ordinance, they expended money or did anything else that they would not have done under Ordinance No. 62 in the exercise of their franchise of 20 years, the right to which is not here questioned or sought to be disturbed. Nowhere is it claimed, much less shown, that to permit defendants in error to set up the invalidity of this ordinance would, in effect, operate as a fraud upon plaintiffs in error. All this must be shown, and more, in order to constitute an estoppel, and the burden of proof is on defendants in error to establish all facts necessary to constitute it. 16 Cyc. 811, 812, and cases cited.

To constitute an estoppel, 4 Am. & Eng. Dec. in Equity, 267, 268, says:

"First. There must have been a misrepresentation or concealment of facts. Second. The misrepresentation or concealment must have been with knowledge of the true state of facts, unless the party making it was bound to know the facts, or his ignorance of them was due to gross negligence. Third. The party to whom it was made must have been ignorant of the truth of the matter as to which representation was made. It must have been made with the intention that the other party should act on it; but the place and intent will be supplied by gross and culpable negligence on the part of the party sought to be estopped, if the effect of that negligence is to work a fraud on the party setting up the estoppel. * * * Fifth. The misrepresentation or concealment must be proved to have been the inducement to the actions of the other party. Sixth. The party claiming the estoppel must have been misled to his injury."

We are not unmindful of the contention by defendants in error that the city is estopped to deny the validity of Ordinance No. 67, nor of the long line of cases cited in support of that contention which we have examined. The leading case relied on, as we take it, is *Illinois Trust & Savings Bank v. City of Arkansas City*, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518. In that case on December 28, 1885, the city undertook to pass an ordinance to induce the construction of waterworks in that city for the purpose of supplying its inhabitants with water for public and domestic pur-

poses. The ordinance was defeated in the council, but declared adopted; was approved by the mayor; was accepted by the Interstate Gas Company, to which it granted the franchise to construct and operate the waterworks. . The works were constructed under its provisions at vast expense, $150,000 of which was loaned by the bondholders and secured by trust deed in reliance upon the ordinance, and the city paid the rentals promised to be paid by it until October, 1891. On February 12, 1886, the gas company submitted its selection of water supply for the works to the mayor and city council for their approval, and the council by vote approved the selection. At the same time the gas company presented its written acceptance of the ordinance and the bond required thereby, and these were received by the council in open session. On September 12, 1886, the gas company offered to extend the waterworks by adding hydrants and to furnish certain public places free, and the offer was accepted by a vote of the council. The waterworks were constructed by the gas company, and in September of that year had it ready for operation in accordance with the provisions of the ordinance. On January 17, 1887, a committee of the city council reported to it, and recommended an acceptance of the same which was adopted by the city council. The court, in effect, held that on this state of facts, and by reason of said acceptance, a binding contract existed between the city and the grantee in the ordinance, and that the city was estopped from setting up the invalidity of the ordinance, and in a portion of its syllabus says:

"The representation to the city council of a city in open session by a private party, who is named as grantee in a defeated ordinance upon its records, of a written acceptance of the terms of the ordinance and a bond to construct waterworks accordingly, the construction of the works and the location of the hydrants by such grantee under the direction of the city council, the actual acceptance and use of the works by the city when completed, and the passage by the city council of a formal resolution that the waterworks erected under the ordinance are accepted by the city, constitute a binding contract between the city and the grantee in

the ordinance for the construction and operation of the waterworks according to its terms. No one may, to the damage of another, deny the truth of the representations by which he has purposely or carelessly induced that other to change his situation."

This case is not in point, for the reason that the question as to whether or not an estoppel should be pleaded did not arise and was not passed on by the court, and for the further reason that the facts clearly constitute an estoppel on the part of the city, and that the city would, in effect, be getting the use of a valuable system of waterworks for nothing if allowed to plead the invalidity of the ordinance, which would be a palpable fraud. Here no such result would follow and such is not claimed, or that the city of Sapulpa would, by showing the invalidity of said ordinance, receive an unconscionable benefit from the grantee arising therefrom.

Defendants in error being thus relegated to their rights under Ordinance No. 62, let us see what, if any, right under it they have to maintain this suit. The master found "that on May 23, 1904, the common council of the incorporated town of Sapulpa, Ind. T., granted to the plaintiff Sapulpa Oil & Gas Company a franchise to furnish said town with light and heat by means of natural or manufactured gas, which ordinance is No. 62." That said ordinance provided that:

"Said franchise shall be a contract between the incorporated town of Sapulpa and said Sapulpa Oil & Gas Company, and shall be binding upon all parties with equal force and effect, provided said company shall within ten days after the passage and approval of this ordinance file with the city recorder of the incorporated town of Sapulpa written acceptance of the terms and conditions of this ordinance and shall commence work within the incorporated town of Sapulpa within thirty days after the passage, approval and publication of said ordinance by the incorporated town of Sapulpa, the sinking of a well and prospecting for gas in or near the incorporated town of Sapulpa for the purpose of obtaining gas to comply with the terms of this ordinance."

Said ordinance further provides:

"That if said Sapulpa Oil & Gas Company shall fail to obtain

in sufficient quantities gas from wells at or near the incorporated town of Sapulpa on or before April, 1905, or shall within such time or at any time thereafter fail or refuse to furnish gas in such quantities as required for use by said incorporated town of Sapulpa and its inhabitants and consumers, then, in that event the council of the incorporated town of Sapulpa reserves the right and privilege of granting a franchise by ordinance to any person, firm or corporation, to lay pipes in the streets and alleys and public places, for the purpose of supplying gas to the incorporated town of Sapulpa or its inhabitants, as intended and specified in this ordinance."

This was unexcepted to, and must stand. He further found:

"I am therefore of the opinion and conclude that the Sapulpa Oil & Gas Company did not comply with the terms of Ordinance No. 62 to be performed by it, * * * and that it did not commence work within the incorporated town of Sapulpa within thirty days after the passage, approval and publication of said ordinance by the incorporated town of Sapulpa, and that it did not furnish gas to the incorporated town of Sapulpa, its inhabitants and consumers, before April, 1905."

This was excepted to, and the exception sustained by the court, and it now becomes our duty to turn to the testimony and see whether the court erred in so doing, and, if so, and this finding of fact should stand, what effect, if any, it would have on the alleged exclusive feature of said franchise.

Counsel on both sides properly agree that an ordinance such as is under construction is, in effect, a contract, and should be governed by the same rules of construction as any other contract between individuals or private corporations, except that it should be construed strictly against the grantee and liberally in favor of the people or the grantor. The exclusive franchise is claimed to be the right under Ordinance No. 62, § 1, in substance, to erect, maintain, and operate a gas plant, and to lay pipes for conducting it through the streets and alleys of the town of Sapulpa for the purpose of supplying the inhabitants thereof for a period of 10 years. Said section reads:

"That in consideration of the benefits that will accrue to the incorporated town of Sapulpa, Indian Territory, and its inhabi-

tants from the erection, maintenance and operation of a gas plant or plants in and laying of pipes for conducting such gas through, under and above the streets, alleys and public places of the incorporated town of Sapulpa, Indian Territory, and in addition thereto, the right and privilege of entering upon any streets, alleys, public grounds or bridges in said incorporated town of Sapulpa, and additions thereto for the purpose of laying mains and pipes and adjuncts thereto for the conveyance of gas only for the period of twenty years, said privilege to be exclusive for the first ten years of said period, except as to any additions which may hereafter be added to the incorporated town of Sapulpa, Indian Territory, and additions thereto and the consumers thereof, is hereby granted to the Sapulpa Oil & Gas Company, a corporation, its successors and assigns."

As a condition precedent to this ordinance operating as a contract or a grant of an exclusive franchise for 10 years, it was specifically provided in said ordinance, as stated by the master, *supra,* that "it shall be a contract between the incorporated town of Sapulpa and said Sapulpa Oil & Gas Company, and shall be binding upon all parties with equal force and effect, provided said company * * * shall commence work within the incorporated town of Sapulpa within thirty days after the passage, approval, and publication of said ordinance by the incorporated town of Sapulpa, the sinking of a well and prospecting for gas in or near the incorporated town of Sapulpa for the purpose of obtaining gas to comply with the terms of this ordinance. * * *" As a further condition precedent to the contract operating as an exclusive franchise, said ordinance, as found by the master, *supra,* provides:

"That if said Sapulpa Oil & Gas Company shall fail to obtain in sufficient quantities gas from wells at or near the incorporated town of Sapulpa on or before April, 1905, or shall within such time or at any time thereafter fail or refuse to furnish gas in such quantities as required for use by said incorporated town of Sapulpa and its inhabitants and consumers, then, in that event the council of the incorporated town of Sapulpa reserves the right and privilege to grant a franchise by ordinance to any person, firm or corporation, to lay pipes in the streets and alleys and public places for the purpose of supplying gas to the incorporated town of Sa-

pulpa and its inhabitants, as intended and specified in this ordinance."

Thus it will be seen that the right to an exclusive franchise for 10 years rested upon the condition that the Sapulpa Oil & Gas Company find gas in quantities sufficient to meet said requirements at or near said town within three miles thereof before April, 1905. It is therefore vital to the sustaining of this exclusive feature that the conditions precedent shall have been complied with. The master in effect found, as stated, that they had not been. The court, sustaining the exceptions to this part of the master's report, found that they had been, which is assigned as error, and it is now for us to determine whether the court erred in so finding. If so, the master's finding of fact on this point must stand.

This finding of fact by the master was not merely advisory to the court, but had the force and effect of a special verdict of a jury, and, if there is any evidence reasonably tending to support it, the court erred in sustaining plaintiffs' exception thereto, otherwise not. *Hope v. Bourland,* 21 Okla. 864, 98 Pac. 580, and cases cited. On this point the testimony discloses no room for reasonable doubt. In fact, the Sapulpa Oil & Gas Company has confessed as much in this record. On June 10, 1905, said company made a contract assigning all its rights, title, and interest in and to this franchise to the Central Light & Fuel Company for and in consideration of the sum of $1,000 wherein it recites:   .

"And, whereas, Sapulpa Oil & Gas Company is financially unable to develop its said oil and gas leases, and is unable to comply with the terms, conditions, and provisions of said ordinance, and the franchise thereby granted, owing to financial difficulties, and is heavily indebted in large sums of money which it is unable to pay off and discharge:   Now, therefore, in consideration of of the payments hereinafter agreed to be made by the Central Light & Fuel Company to the Sapulpa Oil & Gas Company hereby sells, assigns, transfers, and sets over unto the party of the second part, its successors and assigns, all and singular, its rights, title, and interest in and to the franchise by said ordinance above described, granted, and evidenced.   *   *   *"

This would seem to be sufficient to establish this point, but

the evidence of Harry H. McFann, a witness for defendants in error, shows that he was in the employ of the Sapulpa Oil & Gas Company between April, 1904, and April, 1905, and assisted in procuring this franchise; that it was not before the 27th of June 1905, some 20 days after the Central Light & Fuel Company took the assignment to this franchise, that they commenced supplying gas to the citizens of Sapulpa thereunder.

H. M. Watchorn testifies that he kept the books of the Central Light & Fuel Company during the last part of the year 1905, having entered their employ in August or September of that year; that the said company was absolutely unable to meet the demand for gas as required in said franchise until it had put an extension and had connected up with the Hecla Wells near Red Fork, which was made on April 18, 1906. This testimony stands undisputed, and shows conclusively to our minds that the Sapulpa Oil & Gas Company wholly failed to obtain gas in sufficient quantities or·any quantity for use by the incorporated town of Sapulpa and its inhabitants and consumers from any source prior to April, 1905, and the Central Light & Fuel Company was never able to meet the demand until connected with the Hecla Wells as aforesaid. It therefore follows that the court erred in sustaining this exception to the master's report, and that the report should stand, except as to the finding that the Sapulpa Oil & Gas Company did not commence work within the incorporated town of Sapulpa within 30 days after the passage, approval, and publication of said ordinance by the incorporated town of Sapulpa, which there is no proof to support. Taking the report, then, in its entirety as made by the master with the exceptions thereto, overruled as stated, there only remains for us to make the proper deductions of law from the facts thus found.

We are clearly of the opinion that as Sapulpa Oil & Gas Company did not comply with the terms of Ordinance No. 62, § 6, in that it did not furnish gas to the incorporated town of Sapulpa, its inhabitants and consumers before April, 1905, from any source or in any quantities, the exclusive features of said ordinance

were destroyed, and for that reason the trial court erred in enjoining the town council from granting a like franchise to John Smith.   This is in keeping with express terms of the ordinance, which provides: "Section 6.   *   *   *   If said company, its successors, or assigns shall fail to obtain in sufficient quantities gas from wells at or near the incorporated town of Sapulpa on or before April, 1905   *   *   *   in quantities as required for use in said incorporated town of Sapulpa and its inhabitants and consumers, then in that event the council of the incorporated town of Sapulpa reserves the right and privilege to grant a franchise by ordinance to any person, firm or corporation" for this same purpose.   The contract granted to Sapulpa Oil & Gas Company by Ordinance No. 62 was, with the exclusive features eliminated, a contract granting a franchise for 20 years, but. not being exclusive, there is no reason why the incorporated  town  of  Sapulpa should be denied the right thus clearly reserved to grant a like franchise to another, and thus secure to its inhabitants the same commodity from another source, as such a contract would not impair the obligation of the contract franchise already granted to defendants in error.

In *Little Falls Water, etc., Co. v. City of Little Falls* (C. C.) 102 Fed. 663, the court said:

"Such grant of franchise, after performance by grantee, is a contract protected by the Constitution of the United States against state legislation to impair it.   *   *   *   State legislation includes, of course, legislation by municipal bodies created by the state with powers of legislation for local purposes.   *   *   *   As to the showing to the effect that the city of Little Falls is taking steps to erect a plant for the supplying of water and electric lights, it appears that the complainants' franchises are not exclusive, and that there was not, as in the case of *Walla Walla v. Walla Walla Water Co.*, 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, any contract on the part of the city that it would not, during the term for which the franchises were granted, erect, maintain, or become interested in like works.   *   *   *   There seems to be no sufficient reason for enjoining the city from constructing and operating a water plant and electric light plant contracted to receive from, and pay

to, the complainant, as such construction of a new plant would not release or affect its contracts with complainant."

It is well established that a city granting a franchise as herein may grant a similar franchise to some other person, firm, or corporation unless the former franchise was made exclusive in express and unequivocal terms. *Chas. A. Long v. City of Duluth et al.*, 49 Minn. 280, 51 N. W. 913, 32 Am. St. Rep. 547; *Appeal of Howard et al.*, 162 Pa. 374, 29 Atl. 641; *Bienville Water Supply Co., v. City of Mobile et al.*, (C. C.) 95 Fed. 539; *Thompson-Houston Electric Co. v. City of Newton et al.* (C. C.) 42 Fed. 723; *Long Island Water Supply Co. v. City of Brooklyn*, 166 U. S. 685, 17 Sup. Ct. 718, 41 L. Ed. 1165, and cases cited.

We are therefore of the opinion that the court erred in granting the restraining order complained of, and in making the same perpetual, and that the same should be dissolved and the judgment of the trial court reversed, and this cause dismissed and it is so ordered.

All the Justices concur.