BROWN *et al.* v. WILSON *et al.*

No. 7370. Opinion Filed January 11, 1916.

Dissenting Opinion October 10, 1916.

Rehearing Denied October 10, 1916.

(160 Pac. 94.)

1.    **OIL AND GAS—Lease—Construction—Forfeiture.** Where an oil and gas lease was made, executed, and delivered for the consideration of $1 in hand paid the lessor, and the covenants and agreements thereinafter contained on the part of the lessee, and leased and let to him a certain tract of land for a term of ten years and as long thereafter as oil and gas or either were produced therefrom by the lessee, he to yield to the lessor certain royalties from the oil and gas produced, and where the lessee agreed to complete a well on the premises within four months from the date thereof or pay at the rate of $80 in advance for each three months such completion was delayed, **held**, that the $1 supported the four months period in which the lessee had to complete a well and supported no other stipulation in the lease; that the prospective royalties were the sole consideration for the execution of the lease on the part of the lessor; that the agreements on the part of the lessee to complete a well on the demised premises within four months or pay for delay conferred an option on the lessee to drill or pay; and that a failure to do either forfeited the lease at the option of the lessor, who thereafter was entitled to have the same judicially declared forfeited and canceled as a cloud upon his title.

2. **SAME—Provisions as to Surrender.** Where such lease reserves to the lessee and his assigns the right at any time after four months, on the payment of $1 and all payable obligations then due the lessor or his assigns, to surrender the lease, if not tested, for cancellation, **held** that, as said lease, construed as a whole, confers on the lessee an option to complete a well within four months or pay for delay and a further option to surrender at any time after four months, and thereby avoid doing both, it was voidable at the option of the lessor at any time after four months for lack of mutuality, in that it imposed no legal obligation on the lessee; that, as prospective royalties were the sole consideration for the execution of the lease on the part of the lessor, payment of which could be defeated by a surrender thereof by the lessee, the lease was **nudum pactum;** and that, as the same reserves to the lessee the right to surrender the lease at any time after four months before development, a corresponding right exists in the lessor to compel a surrender.

3. **SAME—Rights of Parties—Delay Rental.** Where said lease as to 80 acres of the demised premises was assigned to the S. S. Co., and where on July 17, 1914, $20 delay money fell due and payable thereon from the lessee to the lessor, assuming that the lessor and all parties in interest under the lease agreed to the substitution of said company as lessee of said 80 acres so assigned, evidence examined, and **held,** that said company defaulted in said payment, and that time was of the essence of the contract, that the court erred in refusing to so hold, and that said lease was forfeit as to the holding of said company under the lease, and to cancel the lease accordingly.

4. **SAME.** Where said lease as to 240 acres of the demised premises was assigned to W. and C., and where on April 17, 1914, $60 delay money fell due and payable thereon from them to the lessor, evidence examined, and **held,** that they defaulted in said payment, that time was of the essence of the contract, that the court erred in refusing to so hold, and that said lease was forfeit as to their holdings thereunder, and to cancel the same accordingly.

5. **SAME—Forfeiture.** Where the lessor after forfeiture incurred brought suit to have the same judicially declared and to clear his title and thereafter executed a second lease on the same premises and thereafter parted with his interest as lessor in the demised premises, evidence examined, and **held,** that the court erred in refusing to grant such relief to him and to all parties in interest under the second lease.

(Syllabus by the Court.)

Kane, C. J., and Thacker, J., dissenting.

*Error from Superior Court, Muskogee County;*
*H. C. Thurman, Judge.*

Action by L. B. Brown and others against M. S. Wilson and others. Judgment for defendants, and plaintiffs bring error. Reversed and remanded.

*Gubser & Means, Noffsinger & Broome, Sumner J. Lipscomb, Thomas H. Owen,* and *Joseph C. Stone,* for plaintiffs in error.

*Geo. S. Ramsey, Edgar A. De Meules, Malcolm E. Rosser, Robertson, Bailey, Nelson & Bailey, James L. Powell, S. W. Hayes,* and *J. R. Cottingham,* for defendants in error.

TURNER, J.   On June 17, 1912, John S. Ruhl and Lena, his wife, being the owners and in possession of the land therein described, made, executed, and delivered to M. S. Wilson an oil and gas mining lease, which was duly recorded, the pertinent part of which reads:

"* * * That the said parties of the first part, for and in consideration of the sum of one dollar in hand, well and truly paid by the said party of the second part, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the party of the second part, to be paid, kept, and performed, have granted, demised, leased, and let and by these presents do * * * grant, demise, lease, and let unto the second party, his heirs, successors, or assigns, for the sole and only purpose of mining and operating for oil and gas: * * * The southeast quarter (¼) of section fifteen and the southwest quarter (¼) of section fourteen (14), both in township 14 N., of range 16 E., containing three hundred and twenty (320) acres, more or less. * * *

"It is agreed that this lease shall remain in full force for the term of ten years from this date, and as long thereafter as oil or gas, or either of them, is produced

therefrom by the party of the second part, his heirs, successors or assigns.

"In consideration of the premises the said party of the second part covenants and agrees:

"First. To·deliver to the credit of the first parties, their heirs and assigns, free of cost, in tank or the pipe line to which he may connect his wells, the equal one-eighth. (⅛) part of all oil produced and saved from the leased premises.  *  *  *

"The party of the second part agrees to complete a well on said premises within four months from the date hereof, or pay at the rate of  eighty ($80.00) dollars in advance, for each additional three (3) months such completion is delayed from the time above mentioned for the completion of such well until a well is completed.  The. above rental shall be paid to the first parties in person or to the credit of the first parties at the First National Bank of Boynton, Okla., and it is agreed that the completion of such well shall be and operate as a full liquidation of all rent under this provision during the remainder of the term of this lease.  *  *  *

"The party of the second part shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

"The party of the second part, his heirs and assigns, shall have the right at any time after 4 mos. on the payment of one dollar and all payable obligations then due to the parties of the first part, their heirs and assigns, to surrender this lease, if not tested, for cancellation, after which all payment and liabilities thereafter to accrue under and by virtue of its terms shall cease and determine.

"All covenants and agreements herein set forth between the parties hereto shall extend to their successor, heirs, executors, administrators and assigns.  *  *  *"

Thereafter C. B. Wilson and D. A. Cameron became and now are the assignees of the southwest quarter of section 15; the Seven Sands Oil & Gas Company, the assignee of the east half of the southwest quarter of section 14; John A. Sheppard, the assignee of an undivided half interest in the west half of the southwest quarter of said section; and said Wilson and Cameron, the assignee of the remaining undivided one-half interest therein, all of whom will be hereinafter called lessees.

Thereafter, to wit, on August 29, 1914, said Ruhl and wife made, executed, and delivered a second lease of the same land to one Leidecker, and later parted with their interest therein as lessors to one Humphreys, who later acquired the lease and thereafter conveyed his entire interest in the property to the plaintiffs in error, who, later, leased the entire 320 acres to John A. Sheppard, one of their number, and who is the same Sheppard who also owns, but who claims no interest in, an undivided 80 acres contained in the first lease, as stated.

Prior to the execution of the lease to Leidecker, to wit, on August 1, 1914, John S. Ruhl and wife brought suit to establish, as a matter of record, the forfeiture of the lease of June 17, 1912, and to cancel the same upon the ground that the same was unilateral, unperformed, optional as to the lessee and his assigns, and therefore optional as to the lessor, and that there was default in the payment of the rentals or delay money on the part of the lessees. Pending this suit, Cameron and Wilson, without leave, on September 3, 1914, entered and took possession of the southwest quarter of section 15 and thereupon erected a rig and commenced to drill a well, and thereafter struck oil in paying quantities, whereupon they brought suit to cancel the second lease as a cloud upon their title and to

restrain plaintiffs in error from claiming thereunder and from interfering with their possession. Before being restrained, however, plaintiffs in error took possession of the well and thereafter enjoined defendants in error, or those claiming under the first lease, from interfering with their possession. After issue joined, the two cases were consolidated, and there was trial to the court and general judgment for defendants in error, sustaining the validity of the first lease and clearing the title of all parties in interest thereunder as prayed, to reverse which it is assigned that the same is contrary to the law and the evidence.

No well was ever commenced nor possession yielded of the demised premises to the lessees under the first lease, but up to July 17, 1914, some $420 had been paid by them, from time to time, as delay money. It is contended that the Seven Sands Company defaulted in the payment of $2% delay money due that day on its 80 acres and thereby incurred a forfeiture of that part of the lease. Assuming that all parties in interest agreed to the substitution of said company as lessee of the 80 acres assigned it, as contended by said company, on this point there is no conflict in the evidence. It discloses that on the next preceding rent paying day, i. e., April 17, 1914, Wilson and Cameron took from Ruhl this receipt:

"April to July 17, 1914.

"Boynton, Okla., April 17, 1914.

"Received from C. B. Wilson, by D. A. Cameron, atty., the sum of $20.00 for rental on lease on the E. ½ of S. W. ¼, of Sec. 14, Twp. 14, Rg. 16 E., recorded in Muskogee county, Muskogee, Oklahoma.    JOHN S. RUHL"

—but that in fact no money was paid Ruhl at that time; that instead, it seems, Wilson and Cameron executed to him their promissory note for $20, payable in 30 days,

which they afterwards met with the check of the Seven Sands Oil Company for $20 drawn on the First National Bank of Chelsea, "by H. H. Lindley, Sec.," which was paid and its proceeds placed to his credit by the bank of Boynton on April 28, 1914. At that time, some delay in payment of delay money having theretofore occurred on the part of the lessees and their assigns, in consequence of which Ruhl had made complaint, he told the bank to go ahead and accept further rentals and give them another chance. This closed that incident so far as the Seven Sands Company was concerned until the next rent paying day. This fell on July 17, 1914. To meet this payment, said Lindley, at Chelsea, registered a letter addressed to Ruhl, at Boynton, Okla., containing a like check for a like amount, which arrived at Boynton on the 17th. On the next day the postmaster mailed Ruhl a rural delivery notice that there was a registered letter in the post office for him. Ruhl came to Boynton August 3, 1914, and there received the letter and the check, both of which he immediately returned to the sender, because, he says, he, being unlearned, did not understand its contents. At no time had the Seven Sands Oil Company funds in the bank to pay the check, and never had an account there. On August 12, 1914, or 25 days after it was due, said company caused $20 delay money to be deposited to the credit of Ruhl in the First National Bank of Boynton, which was the bank named in the lease as authorized to receive it. Ruhl never knew of this deposit until the fall of 1914, and in the meantime had, on August 1, 1914, commenced his action to cancel the lease, as stated, and on August 29, 1914, had executed the Leidecker lease.

It is sufficient to say that sending a worthless check to the lessor for the amount of the delay money is not payment thereof, and that placing the amount due to his

credit in bank long after that time was not payment in advance or, indeed, payment at all, especially after he had declared a forfeiture and begun suit to cancel the lease on the ground, among others, of failure to pay. When the lessee and his assigns agreed in the lease, as they did, to complete a well on the premises within four months from the date thereof or pay at the rate of $80 in advance for each additional three months such completion was delayed after the expiration of the four months, the Seven Sands Oil Company, by accepting an assignment of 80 acres thereof, was on July 17, 1914, no well having been completed, possessed of an option to pay the lessor $20 delay money and thereby keep the lease alive until another rent paying period or not pay, and thereby forfeit or abandon its rights under the lease. This $20 was, by express terms of the lease, not only due on that day, but was payable in advance or as a condition precedent to the continued life of the lease. And time was of the essence of this contract. *Cooper v. Ft. Smith & Western Ry. Co.*, 23 Okla. 139, 99 Pac. 785. In *Frank Oil Co. v. Belleview, etc., Oil Co.*, 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, although an "unless" lease was under construction, what we said there as to that lease is equally applicable here to an "or" lease. There, in the syllabus, we said:

"A gas and oil lease giving the lessee the option to pay a certain sum, and thus extend the lease, is operative against the lessor during such extension only upon the payment of such sum; contract rights being correlative and mutual.  *  *  *

"When contracts are optional in respect to one party, they are strictly construed in favor of the party that is bound and against the party that is not bound."

See, also, *Kolachny v. Galbreath et al.*, 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451.

In *Mitchell v. Probst,* 52 Okla. 10, 152 Pac. 597, we said:

"Where an oil and gas lease provided 'that, if a well is not drilled on said premises in one year from date hereof, then this lease and agreement shall be null and void, unless the party of the second part, within each and every year in advance, after the expiration of the time above mentioned for the drilling of a well, shall pay a rental of $2.50 per acre for the first year,' etc., *held,* that such provision amounts to an option and gives the lessor the right to cancel unless the conditions are complied with.

"Where, in such case, the sum agreed to be paid for the option is not paid at the time agreed upon, nothing else appearing, the lessor has the right to cancel the lease. * * *

"In case of an option, time is of the essence of the contract, unless the contract expressly provides that it shall not be."

It will not do to say that, as the leases in those cases contain express provision that they shall be void if no well is completed within a certain time "unless" the lessee pay a certain sum for delay, what we said there has no application here, where the lease contains no such provision, but binds the lessee to complete a well within a certain time "or" pay for delay without providing that the lease shall be void on failure so to do. This for the reason that the leases there and the lease here alike give to the lessee the same kind of an option. In other words, although not couched in the same terms, the option in both leases to pay or not to pay for delay amounts to the same thing and works the same result; that is, if exercised it prolongs the life of the lease, if not, the lease is abandoned by the lessee and is forfeitable at the option of the lessor, and, after forfeiture declared, being a cloud upon his title, the lessor has a right to come into a court of equity and have it declared forfeit and canceled and removed.

We said the option was substantially the same in an "unless" lease as in an "or" lease. What the option is in an "unless" lease we have just shown by quotations from former opinions of this court. That it is substantially the same in an "or" lease is shown in *McMillan v. Phila. Co.,* 159 Pa. 142, 28 Atl. 220. There the court said:

"The lessee had covenanted to do one of two things: to begin a well within 60 days and complete it within three months thereafter, or pay $25 per month as rental for the privilege of doing so afterward, and within the three years which limited his term, unless oil or gas was found in paying quantities. * * * He may drill the well and so pay no rental, or he may pay the rental and not be compelled to drill the well. It is not for the lessor, but it is for the lessee, to elect which he will do. This option was deducible from the stipulations of the lease, but the parties chose to put it in words and make it part of the contract."

*Jennings-Haywood Oil Syndicate v. Houssiere-Latreille Oil Co.,* 119 La. 793, 44 South. 481, treats the obligation of the lessee to drill or pay delay money as an option substantially the same as in an "unless" lease, and that, too, in construing an "or" lease, as here. The court said:

"If he merely secured an option, then, by failing to make the fourth quarterly payment within the time fixed for the exercise of the option, he, or his assigns, forfeited all rights under the contract; and there is an end of the matter. *Escoubas v. Petroleum Co.,* 22 La. Ann. 280. It is clear that if I agree to be bound on the condition, or provided you do a certain thing within a certain time, for example, if I agree that you shall have the exclusive right to exploit my land for minerals, provided you begin operations within six months, or pay me in advance of the expiration of the six months $50 for a prolongation of the term, and you fail to do the thing thus stipulated to be done, I am not bound."

And after quoting from Pothier (volume 6, p. 217, sec. 209) said:

"It would seem to be a plain proposition that if I agree to lease you my house on condition that you pay me the rent in advance, and you fail to do so, I am under no obligation to you. 'An option must be exercised within the time limit, or the right will be lost.' 21 A. & E. E. 931; *Richardson v. Hardwick,* 106 U. S. 252, 1 Sup. Ct. 213, 27 L. Ed. 145; *Litz v. Goosling,* 93 Ky. 185, 19 S. W. 527, 21 L. R. A. 129; *Waterman v. Banks,* 144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 479."

And it makes no difference whether the lease contains a forfeiture clause or not, or whether it is an "unless" lease or an "or" lease, as both leases afford to the lessee the same option.

In *Cohn v. Clark,* 48 Okla. 500, 150 Pac. 470, L. R. A. 1916B, 686, there was an oil and gas lease under construction, as here, and, as here, it was an "or" lease, and again, as here, it contained no forfeiture clause. The "or" clause of the lease read:

"Second party agrees to commence operations on said premises within, on or before Jan. 1st, 1910, from this date, or thereafter pay to the first party one dollar per acre per annum annually until a well is drilled, or the property hereby granted is conveyed to the first party."

Reversing the rule and construing it most strongly against the lessor, the court said:

"* * * We will treat this clause as meaning that, upon failure of the lessee to begin operations or to pay rent as the contract provides, that within itself works a forfeiture. * * *"

*Mitchell v. Probst, supra,* was an "unless" lease containing a forfeiture clause in effect that the lease would be void on failure of the lessee to drill or pay "unless." There the court said:

"Where, in such case, the sum agreed to be paid for the option is not paid at the time agreed upon, nothing else appearing, the lessor has the right to cancel the lease."

In *Conkling v. Krandusky*, 127 App. Div. 761, 112 N. Y. Supp. 13, the lease was for oil and gas. It was an "or" lease and contained no forfeiture clause. The sixth paragraph of the syllabus reads:

"An oil lease provided that the lessee should begin operations at a specified time, or, in lieu thereof, pay a rental of $10 per month from that date, with the option at any time to surrender his lease and be released from all unfulfilled conditions. The lessee failed to commence operations at the time specified, and paid the first month's rental of $10, but thereafter, for more than two months, he ceased to pay and made no attempt to bore for oil. *Held* that, as in the lease time was the controlling factor, the failure to enter the premises or to pay the $10 per month was an abandonment of the lease."

In the body of the opinion the court said:

"He must keep his own lease alive, either by the monthly payments or by drilling for oil, if the provisions for his benefit were to be operative. * * * He paid the $10 * * * expecting possibly to go on with the venture. After that, and more than two months before Galletts entered, he ceased paying and made no attempt to bore for oil.

"In this lease time was the controlling factor, and when he failed either to enter the premises or to pay the $10 each month, one or the other of which was essential to keep his right effective, he manifested his purpose to abandon the project."

In Thornton's The Law Relating to Oil and Gas, section 797, it is said:

"If the lessee has only a mere option to enter and explore, then he must do some act toward the development

of the property or pay the rent or commutation money for delay, and in one of these ways exercise his option before the lessor gives notice of his election to revoke and cancel the lease."

It is unnecessary to cite authority in support of what appears to us to be so clear. But see *Smith v. Guffey*, 202 Fed. 106, 120 C. C. A. 436, where the learned Circuit Judge compared an "unless" lease and an "or" lease substantially the same as here and held the difference between the two "negligible.'" And so we say the Seven Sands Oil Company, having failed to pay the delay money in advance, pursuant to the terms of the lease, abandoned and made subject to forfeiture at the option of the lessor all its rights thereunder so far as the 80 acres held by it was concerned. And it makes no difference in our conclusion that H. H. Lindley, who sent the check dated July 15, 1914, signed "Seven Sands Oil & Gas Co., by H. H. Lindley," testified that he, personally, had sufficient money in the bank upon which it was drawn to pay the check, and further that, although he had no arrangement with the bank to do so, yet, as the bank had paid the previous check so drawn and charged it to his personal account, he was of the opinion that the bank would pay the check in question and also so charge it. As the check, had it been good, would not have been cashed in advance, as demanded by the lease *(Kolachny v. Galbreath, supra)*, it goes without saying that a worthless check was not equivalent to placing the money in the hands of Ruhl or depositing that amount to his credit in the bank designated in the lease. We are therefore of the opinion that the court was wrong in holding, as counsel say it did, that the lease in question was not subject to forfeiture, and in failing to hold that, in so far as the Seven Sands Oil Company was concerned, it had abandoned, and made subject to forfeiture at the option of

the lessor, its rights under the lease by failing to pay the delay money in question pursuant to the terms thereof.

It is further contended that Wilson and Cameron defaulted in the payment of the $60 delay money due and payable in advance April 17, 1914, and thereby abandoned and made subject to forfeiture the lease as to the remaining 240 acres of the demised premises. Assuming said amount was all that was due from them to Ruhl on that day, which seems to be the construction placed upon the lease by all parties in interest, the facts disclose that on said day Ruhl executed to Wilson and Cameron a receipt which reads:

"April to July 17, 1914.

"Boynton, Okla., April 17, 1914.

"Received in full $60.00 for rent according to terms of lease recorded in Muskogee county, Okla., given by me to the S. E. ¼ of Sec. 15 and S. W. ¼ of Sec. 14 of Twp. 14, Rg. 16 E.      JOHN S. RUHL."

But in fact no money was paid him at that time. Instead, Wilson executed to Ruhl his promissory note for $60, payable 60 days thereafter, with interest from date, which was not paid when due and not until November 3, 1914, at which time said amount with interest was placed to the credit of Ruhl in the bank designated in the lease, long after he had brought suit to cancel the same and had parted with all interest in the demised premises, as stated. There is no evidence tending to prove that Ruhl agreed to take the note in absolute payment of the debt. On the contrary, the evidence discloses that Ruhl accepted it reluctantly, stating that he was tired of taking notes, as they did not pay them on time and that he could not cash them, but was finally induced to accept the note on the strength of the promise of Wilson that he would pay it before due if Ruhl

would notify him that he needed money. This Ruhl did, and later, before and after it was due, insisted on payment up to the time he brought suit to cancel the lease. But the note was not paid when due, and not until after said suit was brought, to wit, on November 3, 1914, was the amount of the note and interest placed to his credit in the bank named in the lease.

Among other things, it is contended that, owing to the absence of a forfeiture clause therein, the lease was not subject thereto, and, if it was, inasmuch as Ruhl had theretofore accepted the checks of the Seven Sands Company and the notes of Wilson and Cameron for delay money, which was afterwards paid, that he thereby waived the forfeiture, if any, and is estopped to assert it. But, as we have just held that an "or" lease without a forfeiture clause and an "unless" lease with a forfeiture clause alike vest an option in the lessee to drill or pay, and we have seen that a failure to drill or pay, as here, forfeits, or, in other words, operates as an abandonment by the lessee of, an "unless" lease, so we hold that the same result would follow a failure to drill a well or pay pursuant to the terms of this "or" lease, and that there is no merit in the contention that the lease in question is nonforfeitable. And, as we have repeatedly held that in order for defendant to avail himself of an estoppel he must plead it *(Town of Sapulpa v. Sapulpa Oil & Gas Co.,* 22 Okla. 347, 97 Pac. 1007), and such has not been done, and it nowhere appearing that, if true, such conduct misled the lessee to his injury, we pass to the next contention, which is, in effect, that, by accepting the $60 note of April 17, 1914, for the delay money then due and attempting to collect it, which he did, Ruhl evidenced his intent to and did waive the forfeiture (or, rather, his option to declare a forfeiture), if any accrued, and elected to affirm the lease. In support of

this contention, counsel cite Archer on Oil and Gas, p. 284, where it is said:

"If the lessor declares a forfeiture, the lease is terminated, and thereafter no recovery can be had for rentals thereunder; if he claims the rentals, he affirms the continuation of the lease for the period for which he claims."

And 40 Cyc. 268, note 45, where the annotator says:

"The courts not favoring forfeitures are usually inclined to take hold of any circumstances which indicate an election to waive it."

He cites many cases, some of which undoubtedly support his contention. But such is not the rule in this jurisdiction, where, in *Kolachny v. Galbreath, supra,* quoting approvingly from the Mehlin Case, 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942, we said:

"* * * Oil and gas leases are construed most strongly against the lessee and in favor of the lessor."

And in *Deming Investment Co. v. Lanham,* 36 Okla. 773, 130 Pac. 260, 44 L. R. A. (N. S.) 50:

"* * * By failing to drill a well or to pay the rent the lease became forfeited, and no rent was due thereunder. Ordinarily forfeitures are not favored, but gas and oil leases furnish exceptions to this general rule. Thus, in paragraph 148, Thornton's (2nd Ed.), the law relating to oil and gas provides: 'Forfeitures, however, on the part of the lessee in a gas or oil lease, which arise by reason of his neglect to develop or operate the leased premises, are rather favored by the law, because of the peculiar character of the product to be provided'."

Which means that we will not be astute to seize on circumstances indicating a waiver of forfeiture on the part of the lessor. Whether the lease is an "unless" lease or an "or" lease, or whether the "or" lease contains a provision that the same "shall be null and void" on failure to drill or

pay, as is contained in the "unless" lease, or not, the option available to the lessor to forfeit the lease (on failure of the lessee to do either), being for his benefit only, may be waived by him. But there is no evidence reasonably tending to prove that the lessor waived the forfeiture here.

On this point, aside from any question of pleading, the evidence discloses that, at the time the $60 note of April 17, 1914, was taken for the delay money due that day from Wilson and Cameron, Ruhl took the note under protest for the reason that their notes theretofore given by them for the same purpose had not been paid promptly; that Ruhl then and there told them in effect that if he took the note they must start a well within three days, which they declined to do, but promised to start a well within ten days, after which, it appears, he took the note, saying that he would not allow the lease to run longer if they did not and that it was the last chance he was going to give them; that thereupon they agreed upon those terms, and, in addition, Cameron told Ruhl that if he needed the money "bad" he would send it to him at any time; that thereafter, before the note fell due, he pressed them for payment, which was refused, and when due remained unpaid, whereupon he placed the matter in the hands of his attorneys, who, on July 20, 1914, caused written notices to be served on defendants that he had declared a forfeiture of the lease. Of course, Ruhl could have waived the forfeiture by acts from which an intention so to do might fairly be inferred (*St. Paul, etc., Co. v. Cooper*, 25 Okla. 38, 105 Pac. 198) ; but there was nothing in his acts from which to infer such intention, but, on the contrary, everything to lead us to believe that he intended to insist on a forfeiture.

It will not do to say that a forfeiture of the lease should not be enforced for the reason that both the $60

note of Wilson and the $20 check of the Seven Sands Company given Ruhl for the delay money due from them to him on April 17, 1914, and July 17, 1914, respectively, were on November 3, 1914, and August 12, 1914, respectively, paid by depositing the money in the bank named in the lease, and hence the lessee should be relieved of the forfeiture by reason of Rev. Laws 1910, section 2844, which reads:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

This for the reason that, as said lessees stood on their lease in the trial court and denied a forfeiture and there prevailed upon the theory that the lease was not forfeited, if indeed it was forfeitable at all, they will not be permitted to change front in this court and for the first time urge that, under the facts, they should be relieved of the forfeiture, if any occurred. Having failed there to plead in confession and avoidance in virtue of the statute invoked and there put in issue the question of whether or not they had made "full compensation to the other party," as required by statute, and whether their breach of duty was or was not "grossly negligent, willful, or fraudulent," we can give them no relief here, especially in view of the fact that the rights of the second lessees have intervened and had intervened at the time of the rendition of the judgment complained of. Besides, as stated in *Dill v. Fraze,* 169 Ind. 53, 79 N. E. 971:

"There is little or no reason for the interference of a court of equity to prevent a forfeiture before operations have begun, where the operator has sinned away his opportunity under the contract."

We are therefore of opinion that by non-payment in advance of the delay money, as stated, this entire lease was subject to forfeiture, that is, as to the 240 acres thereof held by the Camerons and also as to the 80 acres held by the Seven Sands Company; that, being so subject, the same was not waived by Ruhl and, not being waived, was by him duly declared; that the jurisdiction of the court was properly invoked to have the same declared forfeit and canceled as a cloud upon his title; and that the court erred in refusing to grant relief to him and those claiming under the second lease as prayed, and in granting relief, in effect, sustaining the validity of the first lease.

But let all we have said be as it may: Was Ruhl, together with the owners and holders of the second lease and those claiming under them, entitled to cancel the first lease on other grounds? They contend, in virtue of the general surrender clause contained therein, they were, because, they say, the lease is a "contract," the performance of which is optional on the part of the lessee, and hence is optional on the part of the lessor, and, being unperformed, the lessor had the right to terminate the same at any time and sue to set aside, as he did. This contention must be sustained. Although the lease recites a consideration to Ruhl of $1 paid "and the covenants and agreements hereinafter contained on the part of the second party, to be paid," the real and only consideration for the lease, as a whole, was development by lessee or his assigns. *Jennings, etc., Co. v. Houssiere, etc., supra; Foster et al. v. Elk Fork, etc., Co.,* 90 Fed. 178, 32 C. C. A. 560; *Dill v. Fraze,* 169 Ind. 53, 79 N. E. 971; *National Oil, etc., v. Teel* (Tex. Civ. App.) 67 S. W. 545. After which they were "to deliver to the credit of the first parties, their heirs and assigns, free of cost in the tank or the pipe line to which he may connect his wells,

the equal one-eighth (⅛) part of all oil produced and saved from the leased premises." Now, while there is authority to the contrary *(Brewster v. Lanyon Zinc Co.,* 140 Fed. 801, 72 C. C. A. 213, and others), we hold that the dollar paid Ruhl at the time of the execution and delivery of the lease was the sole and only consideration paid to hold the lease for the four-month term within which the lessee had to enter and complete a well, and that such consideration did not extend to uphold any other stipulation in the lease; and, further, that the agreement on the part of the lessee to pay delay money after that time was a provision made for the sole purpose of prolonging the lease.

In *Lowther Oil Co. v. Guffey et al.,* 52 W. Va. 88, 43 S. E. 101, speaking to the $1 consideration, the court said:

" * * * It was only intended to hold the grant for two years, and after that time a further consideration to prevent forfeiture was provided."

Or, as stated in the headnote to *Allegheny Oil Co. v. Snyder,* 196 Fed. 764, 45 C. C. A. 604:

"* * * The consideration recited ($1) supported, not only the grant for the two years term, but as well the privilege of extending the time for drilling by paying the stipulated price therefor."

In *National Oil & Pipe Line Co. v. Teel* (Tex Civ. App.) 67 S. W. 545, the court said:

"The real consideration of these instruments was not the recited $1, nor the $100 that after two years might be paid, in order that they might keep it going from year to year, but the beginning and prosecuting with due diligence of wells for oil or minerals upon the land; in other words, the development of the property for oils and minerals in the near future. This was the clear purpose of the grant."

See, also *Owens v. Corsicana Petroleum Co.* (Tex Civ. App.) 169 S. W. 192.

Now, if the $1 paid the lessor was earned at the expiration of the four months in which the well was agreed to be, but was not, completed, and thereafter, under the terms of the lease, there remained to the lessee the option to pay for delay, and thus keep the lease alive, or not pay and thereby let it die, with the further option to surrender it for cancellation at any time and thereby terminate the contract and defeat both payment and development, the lease not only lacked in mutuality, in that it imposed no legal obligation on the lessee to do anything, but, in addition thereto, for the reason that it imposed no such legal obligation and left the lessor powerless to compel the lessee to develop and thereby perform the contract and thus yield the lessor the prospective royalties which constituted the sole consideration for which the lease was given, the lease was also *nudum pactum* and nothing more than a a mere option on the part of the lessee, or rather two options: To drill or pay or surrender (and thereby avoid doing either), or, in other words, an option to develop or not to develop, or rather to perform or not to perform the lease contract, as he saw fit.

That such lease is an option is contrary to the holding in Illinois and other jurisdictions, where it is held to vest a freehold estate in the land. Or, as stated in *Guffey v. Smith*, 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856:

"It is settled by the decisions of the Supreme Court of Illinois that an oil and gas lease like that of the complainants passes to the lessee, his heirs and assigns, a present vested right—'a freehold interest'—in the premises, that this interest is taxable as real property, and that the clause giving the lessee an option to surrender the lease at any time is valid, does not create a tendancy at will, or give the

lessor an option to compel a surrender, and does not make the lease void as wanting in mutuality. *Bruner v. Hicks,* 230 Ill. 536, 540, 542, 82 N. E. 888, 120 Am. St. Rep. 332; *Poe v. Ulrey,* 233 Ill. 56, 62, 64, 84 N. E. 46; *Ulrey v. Keith,* 237 Ill. 284, 298, 86 N. E. 696; *People ex rel. Carroll v. Bell,* 237 Ill. 332, 339, 86 N. E. 593, 19 L. R. A. (N. S) 746, 15 Ann. Cas. 511; *Daughetee v. Ohio Oil Co.,* 263 Ill. 518, 524, 105 N. E. 308. These decisions constitute rules of property and must be accepted and applied in passing upon the complainants' rights."

But where the lease vests no such interest, but only an option, as here, the great weight of authority supports the rule announced by us in the Mehlin Case, *supra.* There we said:

" * * * An executory contract, which under its terms leaves it optional with one party whether or not he will proceed with the contemplated enterprise, makes the same likewise optional with the other. * * * "

The application of which leads to a rule precisely contrary to the Illinois rule, and that is the rule that, where the lessee has the option to surrender the lease at any time, the lessor has the corresponding option to compel a surrender, and that the lease is void for want of mutuality, or rather voidable, before performance, at the option of the lessor.

In the Jennings Case, *supra,* the lease involved was an "or" lease, as here, in which the lessee agreed to commence development within six months or pay $50 quarterly in advance for each three months' delay and to deliver to the owner a royalty of one-eighth of the production. The lease contained a clause that the lessee might at any time cancel and surrender the lease on the payment of a sum certain. After certain payments were made for delay, the lessor refused to accept the next payment, which was

tendered after the date on which it was due, on the ground that the lease had thereby become forfeit. In a suit to enforce the forfeiture, it was held that such it had become for the reason that the option of the lessee had not been exercised within the time limit, and "that since the sole object and purpose of the contract was to exploit the land for oil and gas, and the contract left the lessee at liberty to do so or not at his option, there was in reality no contract binding on the lessee."

*Owens v. Corsicana Petroleum Co., supra,* was a suit to cancel an oil and gas mining lease, the provisions of which were substantially as here. It was an "or" lease and contained a general surrender clause. Therein the lessee agreed to complete a well on the demised premises within one year from the date thereof or pay to the lessor $28.20 each three months in advance for delay. In construing that clause as operated on by the general surrender clause, the court said:

"If appellants could neither recover damages, require the completion of a well, nor recover $28.20 rent without the consent of appellee, the contract is clearly unilateral and void. Any attempt to do either of these things could be instantly defeated by appellee by interposing that term of the contract whereby it is permitted to surrender the grant upon the payment of $5."

And in the syllabus:

"A contract between an owner of oil lands and an oil company giving the company the right to bore for oil, or to pay quarterly rentals, which, upon acceptance by the owner, extended the contract for another quarter, or to surrender the lease at any time upon the payment of $5 to the owner, was a unilateral contract, void for want of mutuality; the $5, being merely a nominal consideration and no consideration for the grant.   *   *   * "

See, also, *Long v. Sun Co.,* 132 La. 601, 61 South. 684.

*Witherspoon v. Staley et al.* (Tex Civ. App.) 156 S. W. 557, was also a suit to cancel an oil and gas lease in effect as here. It was executed in consideration of $25 and certain royalties, and provided if operations were not commenced with diligence within 60 days from a certain date the grant should immediately become void, except that lessee might prevent such forfeiture by paying $25 every 60 days until an oil well was commenced; construing which, it was held that, since the instrument did not bind the lessee to do anything, it was a unilateral contract and nothing more than an option, which terminated on the failure of the lessee to perform the conditions. It seems that such was the conclusion of the court independent of the general surrender clause in the lease. In the opinion the court said:

"This contract was likewise a unilateral one, in that it did not bind or obligate the lessee to perform any of the conditions thereof, and was therefore lacking in mutuality. See *Natl. Oil & Pipe Line Co. v. Teel,* 95 Tex. 591, 68 S. W. 979, 67 S. W. 545; *Forney v. Ward,* 25 Tex. Civ. App. 443, 62 S. W. 109; *Roberts v. McFadden,* 32 Tex. Civ App. 47, 74 S. W. 111; *Hodges v. Brice,* 32 Tex. Civ. App. 358, 74 S. W. 590; *Marble Co. v. Ripley,* 10 Wall. 339, 19 L. Ed. 955; *Huggins v. Daley,* 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; *Steelsmith v. Gartlan,* 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107. See, also, *Eclipse Oil Co. v. South Penn Oil Co.,* 47 W. Va. 84, 34 S. E. 923; *Harness v. Oil Co.,* 49 W. Va. 232, 38 S. E. 670; *Cowan v. Iron Co.,* 83 Va. 547, 3 S. E. 120."

*Young v. McIllhenny* (Ky.) 116 S. W. 728, was a suit for delay money due on two certain oil and gas leases, alike in all essential particulars. They were "unless" leases, and each provided:

"If no well is commenced on the premises hereby leased, within one year from this date, then this grant shall be null and void, unless the party of the second part shall

pay to the first party ($75 in one lease and $50 in the other) for each year thereafter such commencement is delayed"—and contained a general surrender clause, as here.

Without any particular note of the effect of the surrender clause, in construing the lease, the court said:

"These leases are simply options given by the lessor to the lessee for one year with the right to renew the options at the end of the year upon the payment of $125, if the lessee has not commenced operation thereunder within the 12 months. There is nothing in either the leases or the contract, binding the lessee to do anything. He has the exclusive right to bore for oil or gas upon the premises described in the leases for 12 months, and if he fails to exercise his right, such failure, of itself, operates to cancel the leases. The right to bore for either oil or gas is purely optional with the lessee; the lessor is bound, but the lessee is not. There is nothing in the leases or the contract upon which the lessor could base an action for specific performance; under neither the leases nor the contract could he compel the lessee to commence operations, or to continue them after he had commenced.

"In the case of *Steinwender's Coffee Co. v. Guenther Grocery Co.*, 80 S. W. 1170, 26 Ky. Law Rep. 270, this court, in speaking of a contract similar to the one under consideration, said: 'Contracts which are valid must be mutual and binding upon both parties. As we have said, it is a fundamental principle of law that there must be mutuality in every contract.'"

*Reese et al. v. Zinn et al.* (C. C.) 103 Fed. 97, was a suit for the cancellation of a lease. It does not appear whether the same was an "unless" or an "or" lease, or whether it contained a general surrender clause or not. But therein the court was of opinion that the plaintiff was entitled to the relief sought: First, for the reason that the parties claiming thereunder had by the terms and pro-

visions of the lease forfeited their right, and not only that, but had abandoned the lease.; and—

"Second, because the contract is void for want of mutuality, for the reason that it puts it in the power of the lessee to terminate the lease at will, and thereby confers the same power upon the lessor.' This principle is well settled by numerous decisions, both in our own courts, as well as courts of other states.' 12 Am. & Eng. Enc. Law, 757;. *Kelly v. Waite*, 12 Metc. (Mass.) 300; 2 Bl. Comm. 146 *Guffy v. Hukill*, 34 W. Va. 49, 11 S. E. 754, 8 L. R. A. 759 [26 Am. St. Rep. 901]; *Roberts v. Bettman*, 45 W. Va. 143, 30 S. E. 95; *Eclipse Oil Co. v. South Penn Oil Co.* [47 W. Va. 84] 34 S. E. 932."

See, also, *National Oil, etc., Co. v. Teel* (Tex. Civ. App.) 67 S.. W. 545.

In *Steelsmith v. Gartlan et al.*, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107, the question was, as here, whether the first lease was at an end at the time the second lease was executed. The lease was an "unless" lease and was for and in consideration of $1. It contained a general surrender clause, substantially as here. Referring to the first lease, the court said:

"Mrs. McGregor entered into the lease for the sole consideration of the prospective rents and royalties she would enjoy if the lessee, in diligent search therefor, should find oil and gas in paying quantities. If such lease failed to bind the lessee to diligent search for oil and gas, it was without consideration, binding on neither party, and voidable, if not void, at the pleasure of either. *Cowan v. Iron Co.*, 83 Va. 547, 3 S. E. 120; *Petroleum Co. v. Coal, Coke & Mfg. Co.*, 89 Tenn. 381, 18 S. W. 65."

See, also, *Foster v. Gas Co.*, 90 Fed. 178, 32 C. C. A. 560.

*Eclipse Oil Co. v. South Penn Oil Co.*, 47 W. Va. 84, 34 S. E. 923, was a suit in equity by the owner of the first

58—14

lease against the owner of the second lease on the same property, who had entered and commenced development, to test the validity of the first lease, although nothing had been done thereunder except the payment of the annual rental therein provided for. The lease was for and in consideration of "the covenants and agreements hereinafter mentioned," which was a royalty on production. It provided for the drilling of a well upon the demised premises "within six months from the date of the execution of the lease," or "in lieu thereof" the lessee agreed to pay $1 an acre per annum until the well was completed. The lease also contained a general surrender clause, which, if exercised, would defeat development as here, construing which the court said:

"Under the provisions of the lease in controversy, there is no obligation upon the lessee to explore or pay rent; but he reserved the voluntary option to surrender it at any time, without legal obligation to do anything or pay anything. Hence the lessor had the right to vacate it at any time while in an executory state. * * * The only considerations mentioned in the lease are the royalties and rentals on oil and gas to be produced, and the commutation for failure to complete a well. The plaintiff was not bound to complete a well in any given time, or during the life of the lease, so as to produce oil royalties or gas rentals, but in lieu thereof might pay a commutation, which he reserved the right to defeat at any time before payment enforced by surrender of the lease. It was entirely optional with him to bore or not, or pay or not. He was not bound to do either, but could decline to do both. This lease is not capable of any other construction. A consideration mentioned which is not legally enforceable is equivalent to no consideration, and a contract dependent thereon is as much a *nudum pactum* as if no consideration were mentioned."

In *Petroleum Co. v. Coal, etc., Co.*, 89 Tenn. 381, 18 S. W. 65, Lurton, J., said:

"If the compensation to be paid the lessor depends upon the profit to result from the development and working of a mine, and the lessee is not bound, either expressly or impliedly, to explore and discover, or, when discovered, to work such mine, then no consideration for the lease exists. It is a mere option based upon no consideration, and may be withdrawn at any time before money is expended in doing what is optional upon the part of the lessee. Taylor's Landlord & Tenant, sec. 152."

We are therefore of opinion that, as the lease in question conferred on the lessee the right to surrender the lease at any time after four months before development and thereby terminate the same, a corresponding right existed in the lessor to compel a surrender and terminate the same before development, which he did by making the second lease and yielding possession of the land to the second lessee ( *Oil Co. v. Oil Co.*, 479 W. Va. 84, 34 S. E. 923), and by commencing his action to cancel the same, and that the court was wrong in refusing to grant him relief upon this ground and in granting relief to the lessees sustaining the first lease.

In so holding, we refuse to follow *Brewster v. Lanyon Zinc Co.*, 140 Fed. 801, 72 C. C. A. 213, which counsel for the lessees in the first lease contend should be considered as establishing a rule of property in this state. That was a suit in equity to establish a forfeiture of an oil and gas lease as a matter of record and to cancel the same as a cloud on plaintiff's title, as here. A demurrer was sustained to the petition, from which plaintiff appealed. The lease provided, among other things, that the lessee "may at any time remove all his property and reconvey the premises hereby granted and thereupon this instrument shall be null and void," and that, "if no well shall be drilled upon said premises within five years from this date, second party

agrees to reconvey, and thereupon this instrument shall be null and void." No well was drilled during the first four years of the lease, delay money being paid during the third and fourth years. During the fifth year a well was drilled from which gas was obtained in paying quantities. In refusing to cancel the lease, the court, in effect, refused to apply the doctrine we have applied here, for the reason that the court took an entirely different view of the nature of the lease. The court said that the position taken by reason of the surrender clause that the lease was wanting in mutuality, was terminable at the will of the lessee, and was therefore equally terminable at the will of the lessor, was not sound, for the reason that the lease was in the nature of a grant *in praesenti* of all the oil and gas in the land described, with the right to enter and search for them and to mine and remove them when found. From which premise the court concluded that the surrender clause did not make the estate a mere tenancy at will within the operation of the common-law rule that an estate at the will of one party is equally at the will of the other, and hence denied the relief. Besides, it will be seen that the contract there had been in part performed by boring, but not so here. Here we are not attempting to make application of the doctrine announced after the lease contract has been performed in whole or in part by the lessee, but are applying it where there has been no performance. Although the last case cited came from Kansas, the rule there applied was substantially the Illinois rule, which we have never followed, but refused to follow in the Mehlin Case, the Frank Oil Case, the Kolachny Case, and the Mitchell Case, *supra*. For the same reason we refuse, on this point, to follow *Central Ohio Natural Gas Co., et al. v. Eckert et al.,* 70 Ohio St. 127, 71 N. E. 281; *Brown et al. v. Fowler et al.,* 65 Ohio St. 507, 63 N. E. 76; *Poe v. Ulrey,* 233 Ill. 56, 84 N. E. 46.

Also, *Watford Oil Co. v. Shipman*, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144, where an oil and gas lease is held to convey a "freehold interest."

Neither will we follow *Poe v. Ulrey, supra.* That was a suit in equity against the appellants, the object of which was to enforce a forfeiture and cancellation of an oil and gas lease providing substantially as here. The lessor urged his corresponding right to compel a surrender of the lease in virtue of the surrender clause contained therein giving such right to the lessee; but the court held that such he could not do, for the reason that the consideration of $1 mentioned in the lease as paid to the lessor by the lessee was sufficient to sustain every covenant in the lease, including the surrender clause, and hence the same was not void for want of mutuality. We say we will not follow that case in holding that the dollar was sufficient to uphold the stipulation contained in the surrender clause, for the reason that such holding is not in keeping with reason or the weight of authority, and, besides, we have just held the contrary, and that it was sufficient consideration to hold the lease for the four months during the time the lessee had to enter and complete a well only, and that such consideration did not extend to uphold any other stipulation in the lease. Besides, it would be incongruous with what we have just held, which is that, after the expiration of the four months in which the lessee had the right to enter and complete a well, it is not the dollar paid as consideration to hold the lease during that time which thereafter keeps alive the lease, but the payment of delay money only in advance as a condition precedent to that end. It would also be incongruous with what we have just held, in keeping with what we believe to be the weight of authority, that development is the sole consideration moving the lessor to execute the lease, that is, the lease as a whole; while the

dollar, we repeat, is consideration to sustain the four months' term for drilling.

It is perhaps unnecessary to say, but we will, in the language of the headnote in *Ohio Oil Co. v. Detamore,* 165 Ind. 243, 73 N. E. 609:

"Where the lessee has lost his rights under a lease and the lessor has commenced an action to quiet his title, the lessee by re-entering over the lessor's objections cannot revive any rights to the premises."

See, also, *Zeigler v. Dailey,* 37 Ind. App. 240, 76 N. E. 819.

We are therefore of opinion that as the surrender clause in this lease rendered the performance thereof optional as to the lessee, being unperformed, it was also optional as to the lessor; that, as the clause under consideration gave the lessee the right to surrender the lease at any time after four months, a corresponding right existed in the lessor to compel a surrender; and that the court erred in holding that such right in him did not exist and in refusing to decree a cancellation thereof pursuant to his prayer and the prayer of those claiming under the second lease.

Let the cause be reversed and remanded, to be proceeded with pursuant to the views herein expressed.

SHARP and HARDY, JJ., concur.

---

KANE, C. J. (dissenting). I am unable to concur in the conclusion reached by the majority of the court, and, on account of the importance of the questions involved, I deem it advisable to set out the grounds of my dissent in a separate opinion.

This is a controversy between the lessors of a tract of undeveloped oil land and certain of their lessees and their sublessees on one side, and subsequent purchasers from the lessors and another group of lessees and their sublessees on the other. John S. Ruhl and Lena Ruhl, his wife, are the common lessors and grantors.

On the 17th day of June, 1912, they executed an oil and gas lease for the entire tract of land in dispute to the defendant in error M. S. Wilson. The lease, which did not contain a forfeiture clause, recited, in substance, that it was made for and in consideration of the sum of $1 in hand paid by the lessee, and "for the covenants and agreements hereinafter contained on the part of the party of the second part, to be paid, kept and performed." The *habendum* clause provided that:

"This lease shall remain in force for ten years from this date, and as long thereafter as oil and gas, or either of them, is produced therefrom by the party of the second part, his heirs, successors or assigns."

The lease also contained a clause which obligated the lessee "to complete a well on said premises within four months from the date hereof, or pay at the rate of eighty dollars in advance, for each additional three months such completion is delayed," and another clause which conferred upon the lessee the right "at any time after four months, on the payment of one dollar and all payable obligations then due to the parties of the first part, their heirs or assigns, to surrender the lease, if not tested, for cancellation." In April, 1914, the lessors attempted to declare a forfeiture of the Wilson lease, for failure on the part of the lessee or his assigns to complete a well or pay in accordance with the terms of the lease. On the 1st day of August, 1914, the lessors commenced a suit in equity to

cancel the Wilson lease, upon various grounds, which later will be noticed more in detail; and on the 29th day of August, 1914, they made another lease of the same premises to other parties, who, with their sublessees, constitute the other group of lessees. Subsequently the lessors conveyed their entire interest in the land to still other parties. Although the numerous parties coming into the case from the initial sources above indicated filed voluminous pleadings, praying for such relief, legal or equitable, as their varying circumstances seemed to them to warrant, essentially the cause of action amounted to a suit in equity to declare a forfeiture of the Wilson lease: (1) for failure to drill or pay; and (2) because, on account of the surrender clause, the lease was unilateral and void.

Upon trial to the court the validity of the Wilson lease was upheld, and a decree entered in favor of the group of lessees and sublessees who claimed thereunder; whereupon the lessors, their grantees, and the other group of lessees and sublessees, instituted this proceeding in error for the purpose of reviewing the action of the trial court.

In this court the lessors, the subsequent purchasers of their interest in the land, and all lessees and sublessees claiming under the second lease, are plaintiffs in error, whilst all parties claiming under the first or Wilson lease are defendants in error. This brief general outline of the record sufficiently states the facts to clearly indicate the line of cleavage between the contending parties, and that the case upon its merits turns upon the validity or invalidity of the Wilson lease.

As many of the most serious objections urged against the validity of the Wilson lease by counsel for plaintiffs in error turn upon the construction of the clauses there-

. of hereinbefore set out, it will not be necessary to set out in full the remaining parts thereof in this opinion.

Before reviewing the important questions of law arising out of the various assignments of error presented for review, it will be helpful to notice briefly a few of the preliminary circumstances in which the Wilson lease was given, upon which the parties all agree. Whether the leased tract contained oil and gas was not known at the time the lease was executed. It was in "wild cat" territory wherein the drilling of test wells would be attended with great expense and the many hazards naturally incident to proving and developing a new oil field. The lease itself is free from ambiguity, and no fraud, deception, or overreaching was practiced in procuring it. All the parties were competent to contract with one another and, presumably, entered into the lease because its terms were satisfactory to them. Ordinarily, contracts arising out of such circumstances are not prolific of either suits in equity or actions at law; but counsel for plaintiffs in error and a few of the courts seem to have discovered some subtle distinction between oil and gas leases or contracts and other contracts which, they say, requires the former to be placed in a class by themselves and construed strictly in favor of the lessor and against the lessee, the practical effect of which upon the contract involved herein is stated by counsel for plaintiffs in error in their brief as follows:

"The lease at bar is merely a working agreement for four months with the further provision that the parties might by mutual consent, extend the same quarter by quarter upon payment of rentals upon the same terms without further formality or other written agreement. This renewal or continuation of the working agreement could have been accomplished by tender of the delay money on the one hand and acceptance on the other."

The first assignment of error presented by counsel for plaintiffs in error in their brief is stated as follows:

"The Ruhl-Wilson contract is unilateral, and, having been unperformed when Ruhl declared a forfeiture, the same was optional as to Ruhl because optional as to the lessee. Contracts unperformed optional as to one of the parties are optional as to both."

A great many authorities are cited as supporting this doctrine, among them the following cases decided by this court, which counsel contend are controlling: *Frank Oil Co. v. Belleview Gas & Oil Co.*, 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487; *Superior Oil Co. v. Mehlin*, 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942; *Kolachny v. Galbreath*, 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; *Hill Oil & Gas Co. v. White*, 53 Okla. 748, 157 Pac. 710.

The theory of counsel on this point is further disclosed by the following excerpt from their brief:

"The lease of June 17, 1912, by Ruhl to Wilson, covering the 320 acres involved, was executed for the nominal consideration of $1, the real consideration being the development which Ruhl expected as a result of the contract. The surrender clauses in the lease hereinafter quoted made the same entirely optional with the lessee. He was not required to do anything. The lessee might drill a well on the premises within four months, or he had the option to delay drilling for three months' periods by paying in advance for each quarter $80 for such delay, and he had the further option to surrender the lease if not tested, at any time, upon the payment of the nominal sum of $1 and thereby relieve himself from the payment of rentals. He had the further option, even after entering upon the premises, to abandon the same any time and to remove all machinery and fixtures placed by him on the premises including the right to draw and remove casing. These terms of the contract bring it clearly within the

equitable rule so often announced by this court with particular reference to oil and gas mining leases, that contracts unperformed optional as to one of the parties are optional as to both.

"In the case of *Kolachny v. Galbreath,* 26 Okla. 772, 119 Pac. 902, 38 L. R. A. (N. S.) 451, this court said, as if writing to cover this very case, and as if to declare this very lease voidable at the option of the lessor, citing the case of *Superior Oil & Gas Co. v. Mehlin,* 25 Okla. 809, 108 Pac. 545, 138 Am. St. Rep. 942: 'The general rule in such cases is that contracts unperformed, optional as to one of the parties, are optional as to both. *Venture Oil Co. v. Fretts,* 152 Pa. 451, 25 Atl. 732; *Huggins et al. v. Daley,* 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; *Reese et al. v. Zinn et al.* (C. C.) 103 Fed. 97; *Federal Oil Co. v. Western Oil Co.,* 121 Fed. 674, 57 C. C. A. 428.' The foregoing quotation is a conclusion drawn by the learned justice in answer to a question which he himself had put, as follows: 'Does the surrender clause, as hereinbefore set out, render the lease such a contract as a court of equity will refuse to enforce?' Referring to a surrender clause in the following words: 'It is hereby further agreed that the party of the second part shall have the right at any time to surrender and terminate this grant and demise by serving written notice upon the parties of the first part of such intention, after which all payments or liabilities to accrue shall cease and determine.' This authority is conclusive on this case, for the court says that such a surrender clause giving the lessee the right to surrender also gives the lessor the right to surrender, and that therefore a court of equity will not enforce such a contract."

From an examination of a great many of the authorities cited by counsel for the respective parties as supporting their view of the various questions of law arising out of the foregoing general assignment of error, it is apparent that many of the courts, in citing authori-

ties and discussing the proper construction to be given oil and gas leases, have assumed that such instruments have become standardized, and therefore have not attempted to distinguish with clearness between the varying terms of the contracts involved in the various cases. It is true that there is a general vein of similarity running through all contracts of this nature, and that at present a large majority of them may be embraced within two general classes which, for convenience, have sometimes been designated "unless" leases and "or" leases.

I am aware, of course, that the words "or" and "unless," of themselves, have no particular potency in determining the character of an oil and gas lease; but, in the leases I have examined, the following essential differences between "or" leases and "unless" leases are uniformly found to exist: The "unless" lease by its terms confers upon the lessee the option to continue or renew the lease by payment of rental for certain fractional periods at a time. The payment of the rental is a necessary condition precedent to the renewal of the lease for the fractional times specified in the lease contract. In fact, it is a lease from year to year, or quarter to quarter.

On the other hand, under the "or" lease, containing a surrender clause, the payment of the rentals from time to time is not necessary to renew the lease by fractional periods from time to time; the failure to pay under the "or" lease not operating automatically to terminate the lease. It is true that under the "or" lease, containing a surrender clause, the lessee may accelerate the termination of the lease and his liability thereunder, by payment of the amount which the parties have stipulated in the surrender clause he shall pay for the privilege of being released from the contract; but such leases rarely, if ever,

by their terms become null and void by failure to pay the rentals in advance. In this respect, the two leases are diametrically opposed. The "unless" lease by its terms automatically terminates by failure to pay rentals; whereas, the "or" lease remains in force in the event the lessee does not elect to accelerate the ending of the lease by paying the stipulated consideration for the privilege of surrendering, and by surrendering it. Under the "or" lease (with the surrender clause), even though it contains an express forfeiture clause, the lessor may waive the default and sue the lessee and recover the rentals; the lessee being bound as the lessor's debtor for the rentals until the lessee surrenders. *Cohn v. Clark*, 48 Okla. 500, 150 Pac. 467, L. R. A. 1916B, 686; *Burress v. Diem*, 23 Okla. 776, 101 Pac. 1116.

But in addition to these general classifications, in considering cases upon rental clauses, care should be taken to distinguish between leases containing: (a) An "or" clause and a forfeiture clause; (b) containing an "or" clause and a provision to the effect that a failure to complete a well or pay will render the lease null and void, in effect, a forfeiture clause; or (c) containing an "unless" clause—from leases which provide, as in the case at bar, for a definite term of years, and the lessee agrees either to drill or pay, and which contain no forfeiture clause.

The majority of the court, it seems to me, have fallen into error by not distinguishing the "or" lease, herein involved, from the "unless" leases, construed in the former Oklahoma cases, and failing to observe that, when the "unless" lessee fails to drill or pay, the lease, by its terms, becomes null and void; whereas, failure to either drill or pay under the "or" lease, even though it contains a surrender clause, does not terminate or end the rights and powers of both lessor and lessee, because the lessor still

has the right to elect to keep the lease alive and hold the lessee for the rentals.  Before the lessor's right to keep the "or" lease alive by claiming the rental ends, the lessee must do something more than fail to drill or pay; he must affirmatively surrender the lease and pay the lessor the $1 and all unpaid rentals, pursuant to the terms of the surrender clause.  Mere failure on the part of the lessee under the "or " lease to drill or pay does not constitute an abandonment or surrender of his rights under the lease. If it did, this court could not have sustained an action by the lessor against the lessee for the unpaid rentals, as was done in *Cohn v. Clark, supra.,* and *Burress v. Diem, supra.*

That this court in at least one opinion recognized these distinctions between the "or" lease and the "unless" lease is apparent from the following excerpt from *Frank Oil Co. v. Belleview Gas & Oil Co.,* 29 Okla. 7.19, 119 Pac. 260, 43 L. R. A. (N. S.) 487:

"We have been unable to find a single case where a court of chancery ordered the specific performance of a lease at the instance of the lessee, where there had been no development and the lease provided only that it should be forfeited unless the lessee paid a certain sum of money for delay, such contract being merely optional; but, where the contract provided that there should be certain development or the lessee should pay a certain specific sum of money, then, in the event of delay or failure of development, an obligation was incurred on the part of the lessee to pay a certain sum of money."

Observing these fundamental differences in the terms of the two classes of contracts, it is not necessary to notice in detail the distinctions which might be drawn between the form of the actions and the nature of the relief prayed for in the former Oklahoma cases cited, and

the form of the action and relief prayed for in the case at bar, or the distinguishing features of each case, for the reason that the contract now under consideration is so different in the essential features just pointed out, from the contracts formerly construed, as to render the former class of cases wholly inapplicable to the case at bar.

When these differences between the "unless" leases construed in *Kolachny v. Galbreath, supra,* and the other cases of that class, and the "or" lease, herein involved, are considered, it is apparent to me that this court has never held, in a suit of this nature, that the surrender clause in an "or" oil and gas lease, supported by an independent consideration, renders such lease void, or unilateral, nor that it creates a tenancy at the will of either party, nor that such a lease is optional as to the lessor. On the contrary, it seems to me that to so hold would overrule in principle *Frank Oil Co. v. Belleview Gas & Oil Co., Deming Investment Co. v. Lanham, Mitchell v. Probst,* and other cases of that class.

Having reached this conclusion, which I have shown is not in conflict with any former decision of this court, it does not seem necessary to distinguish the case at bar from the cases from other jurisdictions cited by the majority of the court and counsel, as supporting the rhythmic doctrine that "contracts unperformed, optional as to one of the parties, are optional as to both." It is sufficient to say of such cases that in none of them do I find any support for the contention that the effect of a surrender clause in a lease expressly agreed upon between the parties, which, by its terms, grants the lessee the right to surrender, and for which privilege the lessee obligates himself to pay an adequate independent consideration, is to confer a corresponding right upon the lessor

to forfeit the lease at his option, without any agreement to that effect, or the payment or promise of payment of any consideration whatever. The authorities, it seems to me, are to the contrary. *Legg v. Benion,* Willes (Eng.) 43, 125 Com. Pleas Rep. 1047; *Brewster v. Lanyon Zinc Co.,* supra; *Brown v. Fowler,* supra; note to *Warehouse Co. v. Paper Co.,* Ann. Cas. 1916B, 308.

And it also may be added that the value as authorities of the cases from Louisiana, principally relied upon by counsel for plaintiffs in error upon this point, will be greatly minimized when it is considered that in that jurisdicton, which derives its jurisprudence from the civil law, $1 is not considered an adequate consideration to support a contract. That the rule as herein stated in cases wherein the consideration is deemed to be inadequate is clearly established by the recent case of *McClendon v. Busch-Everett Co.,* 138 La. 722, 70 South. 781.

Being unhindered by the decisions of our own court, it seems to me that, in construing these contracts, it would be more consonant with right and justice and sound business principles to follow the familiar trend of authority from the other great oil producing states of the Union, and particularly the doctrine approved by the Supreme Court of the United States and the Circuit Court of Appeals for the Eighth Circuit, the federal circuit in which this state is situated. Many of the operators within this state have come from states where the surrender clause has been sanctioned by law for the past half century, and, finding the same to be the rule in the Circuit Court of Appeals for the Eighth Circuit, the court of last resort, in many instances, for this jurisdiction prior to statehood, they and the vast number of citizens of this state who joined them in the development of the oil industry were justified in as-

suming that the surrender clause would not be stricken down by the courts of the state.

The following cases hold that the presence of a surrender clause in an oil and gas mining lease does not render it void and subject to cancellation in a suit in equity: *Brown v. Fowler,* 65 Ohio St. 507, 63 N. E. 76; *Central Oil, etc., Co. v. Eckert,* 70 Ohio St. 127, 71 N. E. 281; *Poe v. Ulrey,* 233 Ill. 56, 84 N. E. 46; *Pittsburgh Vit. Pav. & B. B. Co. v. Bailey,* 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745; *New American Oil & Min. Co. v. Troyer,* 166 Ind. 402, 76 N. E. 253, 77 N. E. 739; *Pyle v. Henderson,* 65 W. Va. 39, 63 S. E. 762; *Lovett v. Eastern Oil Co.,* 68 W. Va. 667, 70 S. E. 707, Ann. Cas. 1912B, 360; *Houssiere-Latreille Oil Co. v. J. H. Oil Co.,* 115 La. 107, 38 South. 932; *Brewster v. Lanyon Zinc Co.,* 140 Fed. 801, 72 C. C. A. 213; *Allegheny Oil Co. v. Snyder,* 106 Fed. 764, 45 C. C. A. 604; *Guffey v. Smith,* 237 U. S. 101, 35 Sup. Ct. 526, 59 L. Ed. 856; *Cohn v. Clark,* 48 Okla. 500, 150 Pac. 467, L. R. A. 1916B, 686.

And the following authorities hold that $1 is a sufficient cash bonus consideration to bind the lessor in a surrender clause lease: *Guffey v. Smith,* 237 U. S. 101, 116, 35 Sup. Ct. 526, 59 L. Ed. 856; *Brewster v. Lanyon Zinc Co.,* 140 Fed. 801, 72 C. C. A. 213; *Allegheny Oil Co. v. Snyder,* 106 Fed. 764, 45 C. C. A. 604; *Pittsburgh, etc., Brick Co. v. Bailey,* 76 Kan. 42, 90 Pac. 803, 12 L. R. A. (N. S.) 745; *Poe v. Ulrey,* 233 Ill. 56, 64 N. E. 46; *Watford Oil & Gas Co. v. Shipman,* 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144; *Central Ohio Nat. Gas & Fuel Co. v. Eckert,* 70 Ohio St. 127, 71 N. E. 281; *Brown v. Fowler,* 65 Ohio St. 507, 63 N. E. 76; *Lowther Oil Co. v. Guffey,* 52 W. Va. 88, 43 S. E. 101; *Lovett v. Eastern Oil Co.,* 68 W. Va. 667, 70 S. E. 707, Ann. Cas. 1912B, 360; *South Penn Oil Co. v.*

*Snodgrass*, 71 W. Va., 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; *Pyle v. Henderson*, 65 W. Va. 39, 63 S. E. 762; *Gillespie v. Fulton Oil Co.*, 236 Ill. 188, 86 N. E. 219.

The next assignment of error which would follow in logical order, as well as importance, is stated by counsel in effect as follows: There was default in payment of rentals due April 17, 1914, whereupon the lessor, as he had a right to do, declared a forfeiture because of default in payment. This assignment of error is based upon the assumption by the plaintiffs in error that, nothwithstanding the absence of a forfeiture clause, a slight default in the payments of the rentals, as provided for in such a lease contract, authorizes the lessor to declare the lease forfeited. *Frank Oil Co. v. Belleview Gas & Oil Co.*, 29 Okla. 719, 119 Pac. 260, 43 L. R. A. (N. S.) 487, and several other Oklahoma cases, are cited in support of this doctrine. I have heretofore pointed out some of the distinctions between "unless" and "or" leases, and that it was an "unless" lease which, by its terms, became null and void if delay money was not paid in advance, that was under discussion in the Frank Oil Co. Case, whilst the contract in the case at bar is an "or" lease, which contains no forfeiture clause, nor provision which expressly or impliedly provides that time is of the essence of the contract. By express statute (section 968, Rev. Laws 1910), in this jurisdiction, "time is never considered as of the essence of a contract unless by its terms expressly so provided." *Snyder v. Stribling*, 18 Okla. 168, 89 Pac. 222; *Standard Lbr. Co. v. Miller*, 21 Okla. 617, 96 Pac. 761; *Edwards v. Iola Gas Co.*, 65 Kan. 362, 69 Pac. 350.

It is true that mining and oil leases often contain provisions for a forfeiture in case of cessation of the work in the development of the lands, and such provisions in proper cases the courts have unhesitatingly enforced. 18 Am. and

Eng. Enc. Law, 372. But in the absence of a forfeiture clause, the common-law rule is well settled that a breach by the lessee of his covenants or agreements in the lease does not work a forfeiture of the term. 18 Am. and Eng. Enc. Law, 369.

The following cases support the doctrine that, in the absence of an express forfeiture clause in an "or" lease, there can be no forfeiture for nonpayment of rentals: *Reserve Gas Co. v. Carbon Mfg. Co.*, 72 W. Va. 757, 79 S. E. 1002; *Thompson v. Christie*, 138 Pa. 230, 20 Atl. 934, 11 L. R. A. 236; *Marshall v. Forest Oil Co.*, 198 Pa. 83, 47 Atl. 927; *Rose v. Lanyon Zinc Co.*, 68 Kan. 126, 74 Pac. 625; *Davis v. Chautauqua O. & G. Co.*, 78 Kan. 97, 96 Pac. 47; *Castle Brook Carbon Co. v. Ferrell* (W. Va.) 85 S. E. 544; *Bennett v. Glaspell*, 15 N. D. 239, 107 N. W. 45; 27 Cyc. 716; *Gale v. Oil Run Petroleum Co.*, 6 W. Va. 200.

Counsel seek to avoid the force of these decisions and the general rule governing forfeitures by the application of the rule of construction hereinbefore adverted to, which they state as follows:

"Forfeiture of such a lease is favored. The lease must be construed strictly in favor of the lessor and against the lessee and his assigns."

The application of this doctrine to oil and gas leases is based upon the theory that, because of the peculiar character of oil and gas as property, and the violent fluctuations in the value of lands and leaseholds incident to the discovery of these substances, the courts have placed contracts of this kind in a class by themselves, and, in the light of the known character of the business of oil mining, construe them most strictly against the lessee, and favorably to the lessor.

Without questioning the soundness or justice of this doctrine, it is still but a rule of construction to be invoked only for the purpose of aiding the court in determining the intention of the parties when the contract under consideration is not free from ambiguity. Section 949, Rev. Laws 1910, provides:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article."

Here the contract upon its face is clear and unambiguous. The parties to it have not seen fit to incorporate a forfeiture clause, or words equivalent to a forfeiture clause, into its terms, and I find no justification for writing one into it, in any proper application of the canon of construction invoked. Moreover, the instant case has developed into a controversy between two distinct groups of claimants, each deriving its interest from a common lessor, who has parted with his own interest, and therefore the reason for the rule that the lease must be construed strictly in favor of the lessor and against the lessee has wholly failed.

Having reached the conclusion that there was and could have been no forfeiture of the lease at the option of the lessors for default in the payment of rentals in strict conformity with its terms, the next question which presents itself is whether there was an abandonment of the lease by any of the first group of lessees. Generally, whether a contract is abandoned is a question of fact to be determined by the court or jury from all the facts and circumstances of the particular case. *Martin v. Spaulding et al.*, 40 Okla. 191, 137 Pac. 882.

In *Garrett v. South Penn Oil Co.*, 66 W. Va. 596, 66 S. E. 745, the Supreme Court of Appeals of West Virginia

pointed out the distinction between "abandonment" and "forfeiture" as follows:

"'Abandonment'   *   *   *   rests upon the intention of the lessee to relinquish the premises, and is therefore a question of fact for the jury; while a 'forfeiture' does not rest upon an intent to release the premises, but is an enforced release.   *   *   *   Whether or not a lease has been abandoned is a matter of defense, and need.not be negatived by the plaintiff in an action for rent."

Again, in *Smith v. Root,* 66 W. Va. 638, 66 S. E. 1007, 30 L. R. A. (N. S.) 176, the Supreme Court of Appeals of West Virginia said:

"A lessee may abandon the premises notwithstanding there is no forfeiture clause.  His failure to pay the cash rentals stipulated in the contract may not alone be sufficient to prove abandonment; but his failure to pay, taken in connection with other facts and circumstances evincing a clear intention to abandon the enterprise, coupled with the fact that no operations were ever begun upon the land, is sufficient to prove relinquishment of lessee's right."

In that case the lessees had drilled no well and had defaulted in the payment of five quarterly rentals; also, they had drilled on the adjoining tract, become insolvent, and gone out of business.  All these facts were held to constitute abandonment.

In *Phillips v. Hamilton,* 17 Wyo. 41, 95 Pac. 846, the court held that:

"In determining whether one has abandoned his property rights, the intention is a paramount subject of inquiry, as there can be no abandonment without an intention to do so, and where plaintiff leased certain land to defendant for the purpose of boring for oil and gas, operations to be commenced within a year, and operations were begun within that time and the well drilled, and some seven months after drilling the first well the lessee returned to

erect another rig and drill another well when plaintiff revoked the lease, there was no intention by the lessee to abandon the lease."

Archer on Oil and Gas, p. 501, says:

"To constitute abandonment by the lessee of a lease for oil and gas purposes there must be both an intention to abandon and an actual relinquishment of the leased premises."

In *Fisher v. Crescent Oil Co.*, 178 S. W. 908, the Court of Civil Appeals of Texas said:

" 'Abandonment' is the relinquishment of a right. If the owner sees proper, he may so abandon and evidence his intention by any act legally sufficient to vest or divest the ownership. *Phillips v. Watkins, etc.*, 90 Tex. 195, 38 S. W. 270-274 (3), 470. The existence of the intent to waive or abandon the right on the land was a question of fact for the court trying the same, and, if the facts would authorize the conclusion that there was no such intention, we would not be warranted in setting aside the judgment. *Railway v. Hendricks*, 49 Tex. Civ. App. 314, 108 S. W. 748, 749; *Buffalo Zinc, etc., Co. v. Crump*, 70 Ark. 525, 69 S. W. 572, 91 Am. St. Rep. 87."

In *McMillin v. Titus*, 222 Pa. 511, 72 Atl. 244, the Pennsylvania Supreme Court said:

"Abandonment ordinarily is a question of fact to be determined by the jury under all the circumstances of the case."

It is true that the nonpayment of the rentals under an "unless" lease may well be found to constitute an abandonment, in the absence of circumstances tending to show a contrary intention. If the failure to pay is voluntary, and not caused by some accident, mishap, or mistake, then, under the "unless" lease, the presumption is that the lessee chose that method of surrendering the lease. But, in this

case, the evidence shows almost without dispute, and the trial court found, that the original lessees neither intended to abandon the lease on the 80 acres, nor the Cameron and Wilson 240 acres.

At this point, it may be well to observe that every issue of fact, where an issue of fact was joined by the evidence, necessary to sustain the judgment rendered below, has been settled in favor of the defendants in error by the findings of fact of the trial court.

In such circumstances, not finding the findings of fact made by the trial court to be clearly against the weight of the evidence, the court is not at liberty to disturb them.

The only remaining assignment of error which I deem it necessary to notice is stated by counsel in their brief as follows:

"Development which Ruhl expected to be made under the terms of his lease was the real consideration for the contract. Wilson and Cameron held the contract in a speculative venture, without development, and there was therefore no consideration for the contract."

Whether the lease was unfair and inequitable must be determined, in view of the circumstances in which it was given, which will be found quite fully set out elsewhere in this opinion. In my judgment, the consideration for the lease, viz., $1, paid to the lessors and the covenants and agreements of the lessee cannot, in view of the evidence, be said to be unreasonable. An examination of many of the cases and authorities hereinbefore cited will show that similar leases, resting upon like consideration, have been uniformly sustained by courts of the highest respectability.

The lease upon its face discloses a sufficient consideration to support such a contract, and in clear and unambiguous terms declares that it "shall remain in full force for

the term of ten years from this date, and as long thereafter as oil or gas, or either of them, is produced therefrom by the party of the second part, his heirs, successors or assigns." The intention of the parties being clear, no good reason appears why their contract should not be given effect in accordance with its terms. The authorities seem to be quite uniform to the effect that a lease for a specified term, "and as long thereafter as oil or gas, or either of them, is produced," is not only a lease for the specified period, but beyond it, provided the lessee finds and produces oil during the period named. *McGraw Oil & Gas Co. v. Kennedy,* 65 W. Va. 595, 64 S. E. 1027, 28 L. R. A. (N. S.) 959; *South Penn Oil Co. v. Snodgrass,* 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; *Brown v. Fowler,* 65 Ohio St. 507, 63 N. E. 76; *Young v. Forest Oil Co.,* 194 Pa. 243, 45 Atl. 121; *Chaney v. Ohio & I. Oil Co.,* 32 Ind. App. 193, 69 N. E. 477; *Eaton v. Allegany Gas Co.,* 122 N. Y. 416, 25 N. E. 981; *Dickey v. Coffeyville Vit. B. & T. Co.,* 69 Kan. 106, 76 Pac. 398; *Lowther Oil Co. v. Guffey,* 52 W. Va. 88, 43 S. E. 101; *Tucker v. Watts,* 25 Ohio Cir. Ct. R. 320; Thornton on Oil & Gas, sections 134, 135; *Graves v. Gas Co.,* 83 Iowa, 714, 50 N. W. 283; *Whiteman v. Gas Co.,* 139 Pa. 492, 20 Atl. 1062; *Xenia Real Estate Co. v. Macy,* 147 Ind. 568, 47 N. E. 147.

If there is one thing more than another which would tend to add stability to the oil and gas business, and a sense of security to those entering into oil and gas leases and contracts, it would be strict adherence to the salutary rule that men of full age and competent understanding shall be allowed the utmost liberty of contracting with each other, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice in strict accordance with their plain

terms.   The statute (section 986, Rev. Laws 1910), as well as the rules of construction, enjoins that:

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

There are many elements of hazard and uncertainty for the operator, which naturally inhere in the business of exploring for oil and gas in undeveloped territory; but, if the foregoing fundamental rules are strictly observed by the parties to oil and gas contracts and the courts, it seems to me this element of uncertainty would not be carried into the contracts or leases necessary to carry on this important branch of the great oil industry.

From an examination of the entire record, I am convinced that the trial court correctly found the facts, where issues of fact were joined by the evidence, deduced therefrom proper conclusions of law, and, on the whole, decided the case in accordance with right and justice.

I am authorized to state that Mr. Justice THACKER joins me in this dissenting opinion.